FRYDA, Respondent v. VESELY, Appellant

(123 N.W.2d 345)

(File No. 10037. Opinion filed September 24, 1963)

**Cherry, Braithwaite & Cadwell,** Sioux Falls, for Defendant and Appellant.

**John A. Engel,** Avon, **Ray Post,** Tyndall, for Plaintiff and Respondent.

RENTTO, J. This motor vehicle collision case concerns the application of our comparative negligence statute. On special interrogatories the jury found that plaintiff's contributory negligence was 20% of the total combined negligence proximately causing the injury and that defendant's negligence was 80% of it. Accordingly the jury awarded plaintiff a verdict for $4,000 after finding that his total damage was $5,000. Defendant appeals from the judgment entered on the verdict.

Our comparative negligence law, SDC 1960 Supp. 47.0304-1, reads as follows:

"In all actions brought to recover damages for
injuries to a person or to his property caused by the
negligence of another, the fact that the plaintiff may have
been guilty of contributory negligence shall not bar a re-
covery when the contributory negligence of the plaintiff
was slight and the negligence of the defendant was gross
in comparison but the contributory negligence of the
plaintiff shall be considered by the jury in the mitigation
of damages in proportion to the amount of contributory
negligence attributable to the plaintiff; and all questions
of negligence and contributory negligence shall be for
the jury."

Appellant's basic complaint is that no judgment should have been
entered against him because his negligence was not gross in com-
parison with the contributory negligence of the plaintiff.

The accident happened on an "S" curve on county highway
16, a gravel surfaced road in Bon Homme County. Approaching
this curve from the east the highway is straight and level for some
distance. At the end of this straightaway the highway apparent-
ly curves to the north slightly and then from a crest it goes down
hill for a short distance as it curves to the southwest. From the bot-
tom of the incline west the highway, which is a little over 22 feet
wide, is level east and west but its surface is sloped to the south.
Near the west end of this incline, to the south of the road, there
was a high clump of chokeberry bushes with thick foliage that
extended almost to the southerly edge of the road. Slightly to
the west of this are some boxelder trees. At the north shoulder
of the road is a fairly deep ditch. The collision occurred in this
area of the road.

About 8:00 a. m. on September 1st, 1961, the defend-
ant, an employee of the County Highway Department approached
this curve from the east, driving a two-ton truck with a gravel box
that was 90 inches wide, at a speed of 35 miles per hour. He was
well acquainted with the road having driven over it on numerous
occasions. Plaintiff, who also was familiar with it, approached
the curve from the west driving a tractor going about 15 miles
per hour. In its widest part, at the rear wheels, the tractor was

7½ feet wide with a front portion that was much narrower. The surface of the road was dry and "washboardy".

Their vehicles collided at a point about 50 feet west of the clump of bushes. The left front of the gravel box hit the left rear wheel of the tractor, causing it to be broken. The impact also severed the tractor at its clutch housing and swung it around in the road. It came to rest facing north with the rear portion, the transmission part, near the ditch to the south and the front part, which contained the motor, to the north in about the middle of the road. The truck came to rest on its top in the ditch north of the road facing east.

Defendant testified that in approaching the curve he could see only to the curve. He first saw the tractor as he rounded the curve at which time it was only 15 feet ahead of him. He then turned his truck to the right but he had to cut back to the left to keep from going off the shoulder and into the ditch on the north. He thought that he drove on his side "right until the accident." There is evidence by others that the operator of a vehicle going west on this highway in his own lane of traffic has an open view of the "S" curve for approximately 100 feet from the crest of the incline. From photographs in evidence it can reasonably be concluded that if one approaches this curve from the east in the wrong lane of travel, his view of traffic from the west is obstructed by the clump of bushes to the south of the road to the extent that he couldn't see such traffic until he had rounded the curve.

Plaintiff testified that he was driving his tractor in the lane to his right with the right rear wheel over on the shoulder and off the gravel and that he remained in that lane going around the curve. Because of the clump of bushes and trees to the south of the highway he was unable to see anyone approaching from the east. He didn't see defendant's truck any distance before it hit his tractor. He caught only a flash of it as it went by followed closely by the noise of the collision. He didn't then realize what had hit him. When the tractor came to rest he was still seated on it. The defendant's testimony was that when he first saw the plaintiff he figured he was partly on his side of the road looking at the corn to the south. The motor patrolman testified that he observed a track of

the left rear tire of the tractor a little north of the center of the highway. In this he was supported by the sheriff.

We have no way of knowing which portions of this conflicting evidence the jury accepted or which it rejected, nor to what extent. However, in our review we must look at it most favorably to the verdict, including the possible inferences to be drawn therefrom. When so viewed, concerning plaintiff's conduct the jury could have believed that due to momentary inattention he had gotten slightly over the center of this unmarked highway. As to the defendant, it could find that he drove this large heavy vehicle on the wrong side of the road at a high rate of speed into a curve where he knew his view was partially if not totally restricted.

Under our statute recovery by a plaintiff guilty of contributory negligence is not barred "when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross". In other words, two requirements must be satisfied before our statute is operative: (1) the contributory negligence of the plaintiff must be slight, and (2) the negligence of the defendant must be gross. Since the jury's determination that plaintiff's negligence was slight is not questioned on this appeal, we are concerned only with the second requirement. If the defendant's negligence is less than gross under the circumstances then plaintiff's negligence, however slight, will defeat a recovery.

The word "gross" as used in this statute does not describe an absolute degree of negligence. Nor is it terminology that is exact or precise. Rather it is a comparative term. Whether the defendant's negligence is gross or otherwise is determined by comparing it with the negligence of the plaintiff. Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438. In that case it is said that the defendant's negligence is gross when it appears by a process of comparison "that the disparity between the quantum of defendant's negligence and that exhibited by plaintiff is extreme." But how extreme the disparity must be is not indicated, nor could it be, because as observed therein, "The uncertainty in this legislative concept is intrinsic." Whether the defendant's negli-

gence is gross in comparison depends on the circumstances of the particular case, without any precise or definite rule as a guide.

Viewing the evidence most favorably to the plaintiff, both as to the conduct of the defendant and the plaintiff's own conduct, we believe the jury could reasonably conclude that defendant's negligence was gross when compared with the contributory negligence of the plaintiff. That the jury chose to evaluate these as 80% and 20%, in our view, does not alter the disparity.

■ Appellant's remaining contention concerns the court's refusal to allow the sheriff to express his opinion as to where the point of impact was on the road. In the decided cases there is much diversity of opinion as to the propriety of such evidence. See 66 A.L.R.2d 1048. The courts not admitting it do so on the theory that the subject matter does not require expert opinion testimony or that such evidence improperly invades the province of the jury. Due to an absence of proof as to the qualifications of the witness to express an opinion we do not reach this question.

The witness had been sheriff for about 8 years. One of his duties was to investigate accidents that happened in his county. On the morning in question he accompanied the motor patrolman to the scene of the accident and assisted him in his investigation. Other than stating that he saw some tractor tire marks at the accident scene he did not describe any other physical facts that he observed pertinent to the point of impact. Even if opinion evidence as to the point of impact were proper, it is not shown that "the witness has sufficient knowledge of facts to enable him to form an opinion entitled to be given weight by the jury." 66 A.L.R.2d 1062.

■■ This lack of foundation is tacitly conceded by appellant. To avoid its effect he points out that the lack of qualification of the witness was not a ground of the objection made to his question. The record supports him in this as the only grounds stated were that it called for a conclusion and invaded the province of the jury. However, the rule in this jurisdiction is that the court in sustaining an objection is not bound by the grounds stated therein, but if the objection is overruled counsel is bound by the grounds stated. Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147. The ac-

tion of the court in sustaining an objection is not error if there are in fact good grounds for it. In this instance good grounds for sustaining the objection did exist. Consequently the court's action was not error.

Affirmed.

All the Judges concur.