KLEINSASSER, Appellant v. GROSS, Respondent

(129 N.W.2d 717)

(File No. 10089. Opinion filed July 28, 1964)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Plaintiff and Appellant.

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for Defendant and Respondent.

BIEGELMEIER, P. J.   On a Sunday afternoon John E. Kleinsasser was driving a Chevrolet station wagon in an easterly direction on a graveled road one mile south of Freeman, South Dakota. His daughter Orlene sat in the seat beside him; immediately behind him was Mrs. Floyd Wipf, his wife's sister; to her right Lydia Kleinsasser, his wife, and to her right Sherry Kleinsasser, his 15-year-old daughter. Behind that seat rode Kenneth Wipf, Mrs. Wipf's son. About that time a Chevrolet station wagon driven in a westerly direction by defendant Rodney Gross, age 16, approached the top of a knoll on this road which defendant described as a "roller coaster road." Mary Jo Tschetter, age 15, was a passenger in this vehicle. The two cars collided as a result of which five of the passengers in the two cars were killed. Mrs. Wipf, Mrs. Kleinsasser and defendant Rodney Gross survived. This action by Lydia Kleinsasser, as special administratrix of the estate of John E. Kleinsasser, deceased, was brought against Rodney Gross. To the complaint defendant filed an answer and counterclaim and upon a trial the jury returned a verdict denying damages to both plaintiff and defendant. Plaintiff made a motion for a new trial which was denied and this appeal resulted.

The principal error asserted is the admissibility of the testimony of an expert witness and certain plats and exhibits in evidence which in effect attempted to reconstruct the accident.

Expert opinion as to the ultimate fact in issue has many facets. The general rule denying admissibility is stated and criticized in 11 R.C.L., Expert and Opinion Evidence, § 14, and discussed without the criticism, in 20 Am.Jur., Evidence, § 775, et seq. We have held admissible a doctor's opinion a disease was incurable and a nurse would not be able to carry on her profession, Robinson v. New York Life Insurance Co., 69 S.D. 30, 6 N.W.2d 162, and the opinion of a professor of science as to the point of impact on a power pole made by a speeding auto in free flight after leaving the road grade, Wentzel v. Huebner, 78 S.D. 481, 104 N.W.2d 695. As to that the opinion stated, "Our study of the evidence has convinced us that the opinion but stated what appears as an undisputed fact." His testimony of the minimum speed required for such flight was held proper as fixing more

accurate computations than a jury could make, even though it was indicative of excessive speed to a lay mind. Inertia, gravity and other physical laws were involved. However, it was recognized a patrolman's evidence that defendant could not have driven the road as claimed, though subject to many variables, was within the range of common experience; thus, his opinion was inadmissible and properly rejected, even though he was familiar with the road and drove over it soon after the accident.

It has been the practice of trial courts to admit in evidence rough sketches showing the locations of vehicles after an accident. These have been prepared by witnesses who were involved in the accident or officers who arrived at the scene shortly thereafter; they are generally supported by measurements, debris, skid and slide marks on the road traced to and identified as made by vehicles. See State v. Aarhus, 80 S.D. 569, 128 N.W.2d 881; Stygles v. Ellis, 80 S.D. 346, 123 N.W.2d 348.[1] Observation of some tire marks by a sheriff who arrived at the scene with a patrolman shortly after the accident, without observing any other physical facts, was held to be insufficient foundation to enable him to form, or testify to, an opinion as to the place on the road where the vehicles collided. Fryda v. Vesely, 80 S.D. 356, 123 N.W.2d 345.

The challenged evidence was that of defendant's expert witness, Dr. Ronald Nelson, a college professor of physics and engineering consultant. He had studied at Iowa and Princeton Universities, M.I.T. and other colleges and was in charge of a laboratory at the college doing a wide variety of testing and investigating problems of a technical nature for business and hospitals. He held Ph.D. degrees in physics, mathematics and science. The investigative work related to automobile accidents, and studies of bodies in motion, momentum, velocities and dynamics. He testified that the type and amount of damage to the cars, their final resting place, the nature of the debris and direction it was thrown, gouge marks or scratches on the highway are all factors to be taken into consideration. He went to the scene four

---

1. This evidence is admitted to illustrate the witness' testimony of what he saw at the scene of the accident. Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64. There the court held the prejudicial effect of a diagram showing conclusions as to the relative positions of cars as they approached each other was mitigated by appellant's introduction in evidence of another exhibit showing the same conclusions.

days after the accident, observed the terrain, took measurements of the "lay of the land," distances involved, studied the marks left on the gravel road and then inspected the automobiles which by that time had been moved to a junk yard.

He took sixteen pictures of the cars at the yard and one of the road. These, with five taken by the sheriff at the scene of the accident shortly after it occurred, were introduced in evidence and posted on a bulletin board in front of the jury. Exhibits 1, 2 and 3 were enlarged photos taken by a newsman at the scene. In one the Kleinsasser car was in the position 'it came to rest after the accident. The Gross car had been towed away by a neighboring farmer as it started to burn and had to be moved. The witness pointed out and commented on the damages to and the location of the cars etc. on these exhibits. Exhibits L and M are each small cardboard "planned" views of the Gross and Kleinsasser cars showing the front parts, wheels and tires bent out of shape. They were offered and received for "illustration only." Using these the expert then demonstrated the angle at which they indicated to him the two vehicles were at the instant of impact. His counsel stated "This is without respect to where they were on the highway."

The witness then identified Exhibits N, O and P which he had prepared. These were planned views of the highway drawn to scale on a large cardboard. Each showed the edges of the gravel road by a black line with dotted lines indicating the middle. On Exhibit N of the series the witness had drawn outlines showing the two cars as Exhibits L and M in their planned resting places. He testified the Kleinsasser car was in the same position on Exhibit N as shown by plaintiff's enlarged photo, Exhibit 1; he placed the Gross car on the plat by the evidence of one of plaintiff's witnesses and burned marks on the road shoulder. Exhibit O represented a blank planned view of the highway showing only the edges in black and a dotted center line. Admission of the exhibit was gained by defense counsel's assurance he would "hook it up" later. Using Exhibits L and M "to determine where the two cars may have come together initially and at what angle," the witness was first permitted to use Exhibits L and M, the car representations, and move them about

on Exhibit O to show the angle of the vehicles to each other at the point of impact "Without regard for position on the high-way." Reference herein to the position of the cars to each other as to the angle and point of impact will, for purposes of clarity, be referred to as **point** of impact, their location on the road as **place** of impact. We will return to this **point** of impact claim of error later in the opinion.

After having introduced this evidence, the trial court per-mitted the witness to consider the various possibilities of points of impact and from this to lead up to where on the road the two cars were at the time of impact. Exhibit P, the last of this series, purported to show "the position of the automobiles on the high-way at the point of initial contact" between them. Defense coun-sel stated "These exhibits were all offered for the same purpose of illustrating the testimony of this man who is qualified." The witness was then permitted to place Exhibits L and M over their facsimiles appearing on Exhibit P and demonstrate the movement of the two vehicles following the impact until their final resting place. This evidence was objected to as without proper founda-tion and invading the province of the jury.

After the collision the Kleinsasser car was facing nearly south with its front wheels about seven feet from the south edge of the road. The Gross car was facing southwest with its front wheels on the south shoulder. The front of the Kleinsasser car was about six inches from the side of the Gross car with a larger space at the rear, leaving an area described as a V between them. There was a gouge near a front wheel of the Kleinsasser car. All the debris and marks were on the south half of the road and none on the north half.

The oral testimony as to this was undisputed and the photographs are in accord with it. There was neither evidence of skid or tire marks nor evidence attributing them to either car to support the expert's opinion, had it then been admissible, nor was the gouge mark of any aid to him in locating their positions. In answer to a question whether he had an opinion what caused the gouge based on the testimony he heard in this courtroom, his study of the photographs and the accident scene, he said:

"It's my opinion that this gouge mark may have been caused by any portion of the front end of the Kleinsasser vehicle, or the Gross vehicle, which was pushed down in the collision. It may have been part of the 'A' frame, the frame itself, the wheel, one of the wheels being pushed sideways, a broken piece of metal. These are all things that cause gouge marks in collisions."

Without knowing what part of which car caused the gouge, and relying on the type of damage, the final resting place of the cars and the motion of these vehicles after the collision, the witness was permitted by his testimony, demonstration and exhibits to give his opinion of the location of the cars on the highway at the time of impact. In our opinion proper foundation was lacking for this evidence, cf. Flory v. Holtz, 176 Neb. 531, 126 N.W.2d 686, 692 and Fisher v. Suko, N.D., 98 N.W.2d 895, 899, and it was prejudicial error to admit it. See also Satterland v. Fieber, N.D., 91 N.W.2d 623; Bischoff v. Koenig, N.D., 100 N.W.2d 159; Dickman v. Struble, 104 Ohio App. 44, 146 N.E.2d 636; Macy v. Billings, 74 Wyo. 404, 289 P.2d 422 (dictum); Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635.[2]

The memorandum decision of the trial judge filed under SDC 1960 Supp. 33.0738 without the benefit of a transcript of the evidence mentions that Dr. Nelson in his direct examination "did not attempt to locate the point of impact on the highway (meaning, we assume, the place of impact as stated above);" and "his opinion was confined to the points of impact of the two vehicles." We do not so view it. Exhibit P was admitted over objection as part of his testimony. It graphically depicts his version of the two cars at the time of impact, showing both cars on the left or wrong side of the road at an angle indicating the Kleinsasser car was on the north or wrong side attempting to get back to the south side and the Gross car was trying to pass it on the left or south side. This was directly contrary to the

---

2. See also Biggs v. Gottsch, 173 Neb. 15, 112 N.W.2d 396; Satterland v. Fieber, N.D., 91 N.W.2d 623; Waters v. Coleman, 235 Ark. 559, 361 S.W.2d 268; Venable v. Stockner, 200 Va. 900, 108 S.E.2d 380, "accident analyst"; Murphy v. Hennen, 264 Minn. 457, 119 N.W.2d 489.
   The general subject is treated in 20 Am.Jur., Evidence, § 782; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 9C §§ 6312-6312.5, and note 66 A.L.R.2d 1048 and supplements. It is also discussed, with its applications and limitations, in the April 1957 and October 1958 Insurance Counsel Journal (XXIV - 99; XXV, 438) and 8 Defense Law Journal, page 3 (1960).

testimony of both the plaintiff's eyewitnesses and defendant who each testified their respective cars were being driven on the right side of the road.

Using Exhibits L and M representing the cars and Exhibit O with only the highway edge and center marks on it, Dr. Nelson was asked if he could illustrate the angle of the cars at impact **and** the paths of travel of the vehicles up to the point of impact. When objection was made to the latter, counsel suggested the court consider that for a time while medical testimony was introduced. That question was then withdrawn and the witness was permitted to put Exhibits L and M together at the angle his investigations indicated they were at impact; this Dr. Nelson stated was "Without regard for position on the highway." If angle or points of impact of the cars were all defense counsel expected this witness to prove, he could have stopped there. However, he was then asked, using the same exhibits, if he had made a determination "of the position of these two vehicles **on the highway** at the time of impact." (emphasis supplied) After several pages eliminating possible situations as to the location of the cars, Exhibit P was introduced in evidence over objection with the cars pictured on it as heretofore related. He testified "It's my opinion as to the position of the automobiles on the highway at the point of initial contact * * *."

Admission of the expert's opinion as to the place of collision was prejudicial error and requires a new trial. Therefore it becomes necessary to consider whether the expert's reconstruction of the accident, how it occurred and his opinion of the **point** of impact, is admissible over objections that it invaded the province of the jury. It is before this court for the first time and is a question upon which much diversity of opinion exists. See 66 A.L.R.2d 1048. It was referred to in Fryda v. Vesely, supra, where due to an absence of proof as to the qualifications of the witness to express an opinion, the court concluded "we do not reach this question." The qualifications and competency of a witness and admissibility of such evidence including exhibits generally rests in the sound discretion of the trial court. Helgerson v. Riff, 73 S.D. 467, 44 N.W.2d 126 (handwriting expert) and State v. Aarhus, supra (rough sketch of accident scene by patrolman). This

discretion is not one which is never subject to review. It is circumscribed by other rules that are equally applicable, one of which is where the opinion is not based on the application of any special skill, learning or experience, but is simply the judgment of the expert based on facts or assumptions equally available to the jury and understandable by them, the opinion of the expert is not admissable. Carmody v. Aho, 251 Minn. 19, 86 N.W.2d 692. We have said it must be knowledge beyond the ken of the average layman, Wentzel v. Huebner, 78 S.D. 481, 496, 104 N.W.2d 695, 703; or so far removed from the realm of common experience that the ordinary man with all the facts before him cannot be expected to draw a correct inference. Walthoff v. Hall, 73 S.D. 483, 44 N.W.2d 221. Justice Knutson writing for the court in Carmody v. Aho, supra, reasoned:

> "Opinion evidence of an expert is not admissible simply because he is an expert in some field or another, but it is admissible, if at all, for the reason that his special knowledge and skill may be of assistance to the jury in arriving at a correct conclusion where the subject matter is of such a nature that the jury ordinarily would be unable to do so as well as the expert. On the other hand, where the subject matter is of such a nature that it ordinarily would lie within the knowledge or experience of people of common intelligence, the opinion of experts should not be permitted as a substitute for the combined opinion of the jury. Any other rule would soon lead to trial by experts instead of by witnesses, and jury trials as we have known them would soon be a thing of the past."

■ In this connection it is of interest to note the same person, a Dr. W. H. Tonn, is referred to as the expert witness in three trials which reached appellate courts. See Union Transports, Inc. v. Braun, 1958, Tex.Civ.App., 318 S.W.2d 927; Bolstad v. Egleson, 1959, Tex.Civ.App., 326 S.W.2d 506 and Hightower v. Dr. Pepper Bottling Co. of Shreveport, Inc., 1959, La.App., 117 So.2d 642. These experts are something called "accidentologists." Hagan Storm Fence Company v. Edwards, 245 Miss. 487, 148 So.2d 693. The jury here had before it three eyewitnesses—the

defendant driver and two passengers in plaintiff's car; the sheriff who investigated the accident; a witness on the scene soon after it happened and many photographs of the roadway and cars. The expert's testimony could have been dispensed with and included as argument to the jury by defendant's attorney based on the photographs and other evidence. Admitting it, with his explanations, reasons and conclusions, in effect gave defendant two arguments to the jury, one by a sworn expert and one by his counsel. It may not be amiss to mention the evidence of defendant driver covers eight pages of the transcript and the expert's over 95 pages. The jury was capable of determining whether either driver was negligent from the facts before it. Most jurors drive motor vehicles and are familiar with their behavior and the normal results of head-on and angle collisions without the conclusions of an expert witness. He did not claim to know of any skid marks traceable to a car, or indentations or paint marks on cars indicating the exact point of contact. This evidence invaded the province of the jury as did that of the place of impact heretofore noted. In a close case as the one at bar, such testimony can easily be a determining factor and prejudicial error. Carmody v. Aho, 251 Minn. 19, 86 N.W.2d 692, 697; Fisher v. Suko, N.D., 98 N.W.2d 895, 900. Some courts have admitted expert evidence when no eyewitness survives. Leeper v. Thornton, Okl., 344 P.2d 1101. Whether this should be permitted under the Ex Necessitate Rei rule is not presented on this appeal.

It is unnecessary to consider the other assignment of error directed to the court's instruction as it may not arise on the new trial.

The judgment is reversed.

All the Judges concur.