KOENIG, Respondent v. WEBER et al., Appellants

(174 N.W.2d 218)

(File No. 10499.  Opinion filed February 3, 1970)

**Martens, Goldsmith, May & Porter,** and **Warren W. May,** Pierre, for plaintiff and respondent.

**Woods, Fuller, Shultz & Smith,** and **Merle A. Johnson,** Sioux Falls, **Roubideaux, Poches & Reade,** and **Gerald L. Reade,** Fort Pierre, for defendants and appellants.

ANDERSON, Circuit Judge.

This is a motor vehicle accident case.

Plaintiff, by his Guardian Ad Litem, sued for injuries received when the 1963 Ford Station Wagon in which he was riding crashed into the rear end of the 1957 Dodge truck owned by defendant Almond G. Weber. The accident occurred on U. S. Highway 14 and U. S. Highway 83 at a point approximately three miles east of Pierre, South Dakota. The date of the accident was April 24, 1965. The case was brought on for trial by jury at Pierre, South Dakota. It resulted in a verdict for the plain-

tiff in the sum of $9,500.00. Defendants moved for a new trial following entry of judgment. Defendants' motion was denied. They appeal.

There is little or no dispute as to the facts in this case which, in detail, are as follows.

Defendant Damian Weber, age 16 at the time of the accident, lived with his father Almond G. Weber and family in Rapid City, South Dakota. Defendant Almond G. Weber was an employee of Continental Trailway Bus Company but as a sideline did some trucking with a 1957 two-ton Dodge truck. Defendant Damian Weber, who had obtained a driver's license the year preceding the accident, had driven the truck on numerous occasions. On April 23, 1965, defendant Damian Weber left Rapid City, South Dakota, in the truck with a load of lumber and posts which he delivered to a lumber yard in Blunt, South Dakota. Thereafter he drove to his uncle's farm located seven miles east of Pierre, South Dakota. The truck was equipped with a regular gas tank below the seat and a saddle or auxiliary tank located on the right side of the truck. The main tank of the truck ran out of fuel and Damian put approximately eight gallons of gasoline into the main tank, part from a can he carried with the truck and part siphoned from the auxiliary tank. It was possible to switch from the main tank to the auxiliary tank. While driving the truck Damian switched from the regular tank to the saddle tank to see if it would work. The motor started to sputter when he switched and it appeared that the saddle tank wasn't operating properly because of a fault in the filter mounted between the tank and the fuel pump. Damian decided to go to Pierre to see if he could secure the necessary connections to by-pass the filter between the auxiliary tank and the engine. He stopped at several filling stations in Pierre but was unable to find the proper fitting. During the period of time when he was attempting to secure the fitting, which consumed about an hour, he left the truck motor running because he was fearful that it would not start if he stopped it. Being unable to secure the necessary part or fitting Damian started back for his uncle's farm around 9 p. m. After proceeding about three miles east on U. S. High-

way 14 - 83 the truck ran out of gasoline; he coasted to a halt, parking the truck in what, in his judgment, was as far to the right as possible without going into the ditch. While it appears that there was a 30-inch shoulder on the road where he stopped, a substantial part of the truck was on the traveled portion of the highway.

The testimony of two witnesses, Mrs. Jean Koenig and Clifford Flom, was to the effect that both the right and the left rear wheels of the truck were on the pavement. The paved portion of the highway was approximately 26 feet 3 inches wide at that point. The highway is what is known as a two-lane highway.

Damian turned out the lights of the truck but placed no flares to the rear of the truck or on the highway, although they were available in the cab of the truck. He got out and walked in front of the truck to the right side of it and began siphoning fuel from the auxiliary tank. When the can was about half full, the 1963 Ford Station Wagon driven by Mrs. Jean Koenig of Onida, South Dakota, and containing her three sons, including plaintiff David Koenig and one Ada Jorden, crashed into the rear of the 1957 Dodge truck. At some point west of where the accident occurred a car approached from the east and Mrs. Koenig put her lights on low beam. After meeting the car she met another car going west and Mrs. Koenig kept her car lights on low beam. Mrs. Koenig saw an indistinguishable outline in the road about 150 feet in front of her in her lane of travel. There were no lights on or around this object. She applied her brakes, continuing to apply or pump them until she realized that it was impossible to avoid a collision with the object, which was the parked truck. She attempted to avoid the collision by going into the ditch to the right of the truck but was unable to do so. She determined not to go around the truck to the left because of the approaching automobile. Her car collided with the rear end of the truck with the result that the truck was moved from 9 to 25 feet forward. Plaintiff David Koenig was injured as a result of this accident. The impact between the two motor vehicles was between the left-front door of the Koenig vehicle and the right-rear edge of the box of the defendants'

truck. The injuries sustained by plaintiff David Koenig were lacerations of the forehead, left hand, scalp and fracture of the clavicles. It is apparent that he has a permanent scar on the head and the left hand. It also appears that there will be no functional disability of either the head or the hand.

Clifford Flom was following the Koenig car at approximately 400 feet when the accident occurred. He stated the night was dark and the highway was wet and black at the time of the accident, though the visibility was good; that he saw no lights or reflectors on the truck or other signals indicating its presence. In order to miss the Weber truck, Flom had to take evasive action, skidding around the truck to its left and narrowly missing the left-front portion of the truck.

Defendant Damian Weber stated that he did not have the lights on on the truck because, if he had, he did not know if he could get the truck started; he had flares in the truck and did not use them, but that he could have done so. He stated that he was going to get gasoline from the auxiliary tank and put it into the main tank so that he could get his truck started and in motion. He further stated that he knew that U. S. Highway 14 and U. S. Highway 83 were busy highways; that he did not try to "flag down" any traffic or warn any traffic coming from either direction.

The defendants' 21 assignments of error are grouped into seven main categories, of which the following merit discussion.

■ The court instructed the jury that they could consider all detriment and damage which plainitff was reasonably certain to suffer in the future and any pain or suffering that he was reasonably certain to suffer in the future because of such injuries. In this case the plaintiff's injuries consisted of fractures of the clavicles which, according to medical testimony, healed without any residual disability. Plaintiff also sustained lacerations of the face and hand with resulting scars on the forehead. There was no testimony as to the duration and the extent of the future suffering. This, defendants assert, was such as to make

it error for the trial court to instruct the jury to consider past and future suffering. The rule in this state is that where an injury is objective and plainly apparent the jury may consider such elements without medical testimony but where the injury is of a subjective nature where laymen could not reasonably know whether there will be future pain and suffering, then expert testimony is required to aid the jury in its determination. Klein v. W. Hodgman & Sons, Inc., 1957, 77 S.D. 64, 85 N.W.2d 289. Defendants assert that there was no evidence, lay or expert, that the plaintiff would suffer any detriment or pain or suffering in the future and that it was error to so instruct the jury.

■ Doctor Samuel Balkin, an expert in the field of plastic and reconstructive surgery, testified at some length on the prospective effect of permanent scars on a person. He said, "Young children are just as aware of deformities or scars of their exposed parts, especially the face, as adults are. They may not make as much mention of it but they are quite aware of it. And they are made aware of it very often by adults who keep pestering by asking how they got that scar." Doctor Balkin further testified that plastic surgery would not completely remove the scar but make its appearance less noticeable, and that the evaluation of the success of such a procedure would be measured by the eyes of persons seeing the subject; that there would be pain in connection with an operation to make some correction of the scars. He said in response to counsel's question: "as he came out of the anesthetic would there be any pain or discomfort sustained by him? A. Oh yes. There is pain, discomfort as a result of the cutting and the sewing. And prior to the anesthetic, that is prior to being completely asleep, there are needle sticks and the like which is not without pain." Apparently the testimony of Doctor Balkin was convincing to the jury. Klein v. Hodgman, supra, cannot be disregarded in this case. We are of the opinion that the court's instruction as to future disability and suffering was proper.

■ The matter of instructing the jury that it could, in awarding damages, consider the elements of personal inconvenience and inability to lead a normal life has been before the courts on

several occasions. The determination made by a jury as to damages based on speculation has been proscribed by our court. See Kressly v. Theberge, 1961, 79 S.D. 386, 112 N.W.2d 232. There the court said, "While the nature of the case may not permit estimating damages with certainty, it is the rule in this state that the matter of measuring damages may not be left to mere speculation on the part of the jury. Facts must exist and be shown by the evidence which afford a basis for measuring the loss of the plaintiff with reasonable certainty. Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410."

■ In this case the jury's award of damages for personal inconvenience and inability to lead a normal life was not based on speculation for the reason that the plaintiff's mother testified, "He is very emotional, he seems to be afraid of being hurt, he doesn't like to go out by himself and play like he did before. Up until this year I have had to take him over even for swimming lessons and sit with him and he just—riding a bicycle, he just learned last week, he has cried he has wanted to learn, but he just is afraid of being hurt". Question: "Before the accident, how was he?" Answer: "Just a normal child."

From this the jury had a basis for the determination in awarding damages for personal inconvenience and inability to lead a normal life. The testimony of Doctor Balkin pointed out several factors which bear on plaintiff's future inconvenience and inability to lead a normal life, such as the permanent nature of the scars, the size of the scars and their location. Noticeable scars in the facial area certainly cannot be held lightly.

The trial court instructed the jury as to the American Experience Table of Mortality as to the expectancy of life of one six years of age, which was the age of the plaintiff herein. This, the defendants state, was error claiming the rule to be that mortality tables are admissible in evidence where it is shown that the injuries result in a permanent impairment of earning capacity or result in permanent pain and suffering, quoting in support 15 Am.Jur., Damages, § 339, at p. 779.

Defendants urge there would only be a permanent cosmetic defect from the appearance of the scar on the plaintiff's head and hand; that there is no evidence of any future pain or suffering or impairment of plaintiff's earning capacity or of any disability arising out of the injury, and the giving of the instruction therefore was inappropriate to any issue in the case. Plaintiff's guardian admits that plaintiff is not presently of an age which would allow him to be employed. There is medical testimony as to the psychological problems attendant to such injuries as well as their cosmetic effect that would have a probable effect on earning capacity in the future. There is no question but that the plaintiff was permanently injured and medical testimony was introduced as to the probable future effects of such injuries. In Tenney v. Rapid City, 1903, 17 S.D. 283, 96 N.W. 96, the court held that in an action for injuries where there was no evidence of permanent disability, that tables showing expectancy of life were inadmissible.

■■ It seems reasonable to us that the mortality tables should be considered, even where the disability may be permanent but partial. To require that total impairment of earning ability for mortality tables to be admissible seems to the court to be unduly harsh. It was not error to give the instruction concerning the mortality table.

■■ Defendants have raised objection to the testimony of Motor Patrolman Sergeant Louis Fratzke, of the South Dakota Division of Highway Patrol, who came upon the accident shortly after it occurred. Sergeant Fratzke, who took pictures at the scene of the accident, testified that he used a C-3 Argus flashbulb in his camera. He was asked how the lights of the flashbulb compared with the lights of an approaching vehicle. Sergeant Fratzke, who has spent 10 years as a member of the South Dakota State Highway Patrol, testified that there was more light from the flashbulb at 15 feet than there would be from the lights of an approaching automobile. See 31 Am.Jur.2d, Expert and Opinion Evidence, § 31. The defendants also object to the testimony of Patrolman Fratzke with reference to his opinion concerning the visibility of the defendants' truck at the time of the

accident. Among other things, the witness stated that the box of the truck was unpainted, roughly surfaced, dimensional timber, uniform in color and that it blended well with the background of the dark night. Defendants claim that the opinion of the witness invaded the province of the jury. In Fryda v. Vesely, 1963, 80 S.D. 356, 123 N.W.2d 345, the court held that where a sheriff did not indicate that he had enough facts to warrant an opinion on his part as to the point of impact of a traffic accident, it was not error to exclude this testimony. Such is not the case here. There is no showing that Motor Patrolman Fratzke was not in possession of physical facts which enabled him to form an opinion as to the appearance of the truck. McDuffie v. Root, 1942, 300 Mich. 286, 1 N.W.2d 544, stated that the control of testimony regarding conclusions is largely a matter of discretion for the trial court.

Defendants also claim that it was error for the court to permit Sergeant Fratzke to give his opinion regarding the point of impact, the location of defendants' truck before impact and comparing the damage to plaintiff's car with vehicles in other accidents. Defendants cite Kleinsasser v. Gross, 1964, 80 S.D. 631, 129 N.W.2d 717, as authority for the refusal of the court to receive such testimony. In Kleinsasser v. Gross, which was a head-on collision, the court held that the admission of expert testimony as to the point of impact was prejudicial error because this testimony invaded the province of the jury, especially where there were eyewitnesses to the accident. This case is distinguishable from the Kleinsasser case in that it does not involve a head-on collision where the point of contact would be material for determining fault.

In this case the evidence shows that the Weber truck was occupying substantialy all of the right-hand lane of traffic; that the truck lights were turned off; that no warning flares were placed out; that the truck reflectors were obscured and there were no signaling devices used by defendant Damian Weber to serve notice to the public that there was an element of danger to the traveling public. The burden to show prejudicial error is upon the defendants. Plank v. Heirigs, 83 S.D. 173, 156

N.W.2d 193. We do not believe that the testimony of witness Louis Fratzke was erroneously admitted for consideration by the jury.

     ▮ The defendants also claim that the court erred in admitting the testimony of Doctor Samuel Balkin concerning the medical expense of plastic surgery, the future effects of plaintiff's injuries. In this same connection, defendants also object to the testimony of plaintiff David Koenig's mother to make certain observations and give opinions concerning plaintiff's behavioral changes. The deposition of Doctor Balkin was taken for use at the trial, and the doctor testified that the expense of the recommended surgical procedure, including hospitalization, would be $400.00. We do not believe that it was error to permit the doctor to state his opinion as to the cost of plastic surgery treatment. 31A C.J.S. Evidence § 158.

     ▮▮ Defendants also object to the admission of evidence by Doctor Balkin as to the future effects of plaintiff's injuries, claiming that it was improper for the court to permit such testimony and stating that it would be impossible for the witness to express an opinion that all answers given during the afternoon were based on absolute certainty. When Doctor Balkin was asked at the end of his deposition as to whether his answers were based on reasonable medical certainty he stated, "My answers are based on almost thirty years of observation in the practice of plastic surgery. * * * And it is based entirely on absolute certainty." Medical experts are qualified to express their opinions based upon medical certainty or medical probability, but not upon possibility. Vaux v. Hamilton, 1960, N.D., 103 N.W.2d 291. We see no error in permitting the doctor's testimony regarding the future effects of plaintiff's injuries.

     ▮▮ In this same connection, defendants stated it was error for the court to permit the plaintiff's mother to testify to certain behavioral changes in the plaintiff and in not striking such testimony. Mrs. Koenig testified that there were changes in the plaintiff's behavioral pattern. Certainly, as the boy's mother, she was in the best position to observe such changes and to testify thereto. The general health of a person is a proper sub-

ject of testimony from anyone who is familiar with the person to which it relates. 31 Am.Jur.2d, Expert and Opinion Evidence, § 96. We said in Moberg v. Scott, 1919, 42 S.D. 372, 175 N.W.2d 559, that in a wife's action for loss of consortium and death of her husband that she was allowed to testify as to her observations regarding her husband as to his health and general demeanor. In Hoffer v. Burd, 1951, 78 N.D. 278, 49 N.W.2d 282, the court permitted testimony by a nurse's aide testifying as to the apparent condition of the defendant after an accident. We believe that it was not error to permit the plaintiff's mother to testify concerning any behavioral changes in the plaintiff following the accident.

The evidence shows that the plaintiff sustained lacerations of the forehead, left hand, scalp and fractures of the clavicles. He was hospitalized for less than a week and wore a splint device for approximately a month. Plaintiff made complete recovery from the fractures which healed without disability. Color photographs of the plaintiff showing the scars were introduced into evidence, which exhibits show that the photographs were taken approximately five months after the accident. Approximately a year later the plaintiff was examined by plastic surgeon Doctor Samuel Balkin. Doctor Balkin said, after examining the same pictures, that there had been improvement in the color of the scars, that there was no disability resulting from the scars. Defendants claim that this was sufficient for the court to have granted defendants' motion for a new trial because of excessive damages. A verdict which is not derived from the mere process of computation will not be interfered with unless it is so excessive or so grossly inadequate as to indicate prejudice, passion, partiality or corruption on the part of the jury, or unless based upon a clear misconception. 25A C.J.S. Damages § 196. The court feels that in view of the age of the plaintiff and the fact that he will carry the evidence of scars with him for the remainder of his life—which scars will cause him emotional problems—and also the fact that he will necessarily have to experience further pain and suffering at the time that he undergoes reconstructive surgery to remove the scars and, even after that, he will carry scars, though less noticeable

than previously, it cannot be said that the damages awarded by the jury in this case are excessive. In Morey v. Keller, 1957, 77 S.D. 49, 85 N.W.2d 57, we said, "A verdict will not be disturbed on appeal unless the damages are so excessive" as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption'. SDC 33.1605(5); Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W.2d 700, 702." 25A C.J.S. Damages § 240. We do not believe that it was error for the trial court to deny defendants' motion for a new trial for the reason that the damages awarded by the jury were excessive.

■ It appears from the record that emotion was displayed at the time of the trial. The fact of the matter is that a lengthy discussion was had in chambers with the trial court where counsel for the defendants pointed out that Robert Koenig, guardian ad litem of David Koenig the plaintiff herein, sat in full view of the jury beside his counsel and displayed such emotional reactions as weeping, sniffing, reaching for his handkerchief, displaying tears and interrupting the trial, and that this happened at least four or five times during the first day of the trial and that on all of these occasions he was in full view of the jury and that such tears as he shed could be seen at a great distance because of the numerous amount of tears running down his cheeks; that the first display seemed to be during the voir dire examination when there would have been no cause for such emotional display. He also pointed out that the mother, Mrs. Koenig, also displayed emotion on the witness stand. The record shows another son of Mr. and Mrs. Koenig was fatally injured in this accident. The court overruled defendants' motion for a mistrial. The question of whether emotional manifestations are grounds for a mistrial or a new trial are ordinarily within the discretion of the trial judge.

We are of the opinion that from the language of the court in denying the motion for a mistrial, the trial court acted properly within the bounds of its discretion, and defendants' claim of error in this respect is without merit.

The judgment appealed from is affirmed.

All the Judges concur.

ANDERSON, Circuit Judge, sitting for ROBERTS, P. J., disqualified.

JONES, Circuit Judge, sitting for HOMEYER, J., disqualified.