Howard G. THOMAS and Patrick A. Thomas, Plaintiffs and Respondents,

v.

ST. MARY'S ROMAN CATHOLIC CHURCH, a Corporation, Dell Rapids, South Dakota, Defendant and Appellant.

No. 12290.

Supreme Court of South Dakota.

Sept. 12, 1979.
Rehearing Denied Oct. 10, 1979.

Thomas R. Pardy of Mumford, Protsch, Sage & Pardy, Howard, for plaintiffs and respondents.

A. D. Sommervold of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

HENDERSON, Justice (on reassignment).

### ACTION

This is an action in tort wherein father and son, Patrick Thomas and Howard Thomas (respondents), sued St. Mary's Roman Catholic Church (appellant), for damages totaling $151,950 for injuries Howard Thomas sustained while playing basketball in St. Mary's High School gymnasium. A jury returned a verdict in favor of respondents and against appellant for $125,000. For purposes of convenience and clarity, respondents will be referred to as Thomas and appellant will be referred to as St. Mary's. St. Mary's now appeals this verdict. We affirm.

## FACTS

St. Mary's, a corporation, operates a parochial high school in Dell Rapids, South Dakota. In 1957, it completed construction of a gymnasium that has since been used for various athletic events including inter-school basketball games. During construction of the school, one Monsignor Meyer, acting on behalf of St. Mary's, made the decision and approved the installation of two 30″ × 30″ and two 18″ × 30″ panels of glass in four sections of a sidelight panel adjacent to the west entryway into St. Mary's gymnasium. Two of the lower panels had previously been broken and replaced with plywood.

On February 16, 1973, two inter-school basketball games were held in St. Mary's gymnasium between St. Mary's and Chester High Schools. Howard Thomas, described as an extremely competitive and aggressive ballplayer, was a member of the Chester varsity squad. The varsity game was described that night as fast-break and highly explosive. The Chester team, being behind, had assumed a full-court press. Thomas deflected the ball being handled by a St. Mary's player and chasing the ball, lunged for it just as it was going out of bounds. Thomas succeeded in tapping the ball back into the playing area but his momentum carried him through a glass panel, not previously broken, located within six feet of the west boundary line of the basketball court.

The evidence reflects that as he struck the paneling, the glass shattered, slid and fell, leaving jagged and rough pieces of glass. Thomas sustained injuries consisting of a severed artery and extensive lacerations on both his arms, all of which required immediate treatment at a hospital in nearby Sioux Falls where he underwent surgery. Thomas was hospitalized for one week and had both arms in casts for two months. For a period of eight months, his right arm was in a sling and he wore a supporting brace on his left arm. During this time he suffered pain, stiffness, cramps, and an insensitivity to cold and touch.

The injuries affected his athletic endeavors and coaches testified that Thomas had difficulties participating in sports after this accident. Prior to this accident, Thomas was an all-conference quarterback on his high school football team. He could not play that position the following year because of lack of dexterity in his hands and insensitivity to touch. Thomas could not handle a track-baton or play softball as effectively due to the loss of grip in his hands. He could no longer play basketball as he could not dribble or shoot the ball adequately.

Employers testified that Thomas could not do heavy work for a period of one year after the accident and further testified that he had difficulty handling light tools. Thomas also experienced problems while employed as an electrician because of his inability to determine the amount of pressure he was applying to an object, and thus, was hindered from doing intricate work. At the time of trial, Thomas still suffered from a wrist drop and limited movement in his left wrist. Testimony established that it was necessary for him to be treated by a doctor for three to four years.

Testimony disclosed that Thomas did not know the type of glass, did not realize it was breakable, and did not receive any warning concerning the inherent danger of the glass panels so close to the playing floor. Essentially, Thomas' theory is duty-owed and duty-violated, i. e., St. Mary's invited him to play ball and owed him a duty to exercise reasonable care in providing him a safe place to play ball. St. Mary's denied liability on the theories that: (1) It exercised due care; (2) Thomas was contributorily negligent; and (3) Thomas knew the dangerous condition and assumed the risk.

St. Mary's sixteen assignments of error are grouped into five legal issues set forth below.

## ISSUES PRESENTED

1. Did the court err in refusing to grant St. Mary's motion for a directed verdict

upon the basis that Thomas did not establish a prima facie case? We hold the court did not.

2. Did the court err in entering a $125,000 judgment upon the jury verdict supposedly unsupported by sufficient evidence? We hold there was sufficient evidence.

3. Did the court err in refusing St. Mary's requested instruction on assumption of the risk? We hold the court properly refused this instruction.

4. Did the court err in submitting to the jury the instruction on comparative negligence? We hold the court properly determined that this instruction be given to the jury.

5. Did the court err in excluding St. Mary's offered testimony of an expert witness, a glass installer by trade, and in refusing St. Mary's requested instructions regarding the use of safety glazing materials in certain buildings. Our holding is that the exclusion of the testimony and the refusal to give the instructions was proper.

## DECISION

### I

St. Mary's contends that a verdict should have been directed in its favor on the basis that Thomas failed to establish a prima facie case. St. Mary's urges that before the evidence was sufficient to warrant submission to the jury on the issue of negligence, Thomas was required to produce expert testimony on (1) the use and availability of various types of glass, and (2) the design and construction of gymnasiums. St. Mary's argues that the safe design of gymnasiums and the proper use of glass therein comprise matters not within the common knowledge of jurors. Therefore, it contends that without the support of expert testimony in the record, establishing a standard of care by which St. Mary's conduct could be judged, the jury was not empowered to decide the issue of negligence.

In determining whether the evidence is sufficient to present a question for the jury, Thomas is entitled to have each controverted fact resolved in his favor, in addition to the benefit of all reasonable inferences that can be deduced from the evidence. *Stenholtz v. Modica*, 264 N.W.2d 514 (S.D.1978). We find substantial, credible evidence to sustain the $125,000 verdict.

■ Expert testimony may have been relevant, but was not a prerequisite in establishing negligence under the facts of this case. The conclusion to be drawn from the evidence by the jurors in this case did not require a special knowledge of the properties of glass or the safe design of gymnasiums. Expert testimony is only required when the issues presented relate to matters so far removed from the realm of common experience or beyond the ken of the average layman that with all the facts before it, the jury, without the assistance of expert opinion, could not be expected to draw a correct inference. *Kleinsasser v. Gross*, 80 S.D. 631, 129 N.W.2d 717 (1964); *Walthoff v. Hall*, 73 S.D. 483, 44 N.W.2d 221 (1950).

St. Mary's contention presupposes that glass was the only material which could have been used near the gymnasium floor arguing that an expert witness was needed to explain the various types available. This contention is without merit. Evidence was presented that two bottom glass panels of sidelight had been previously replaced by patching with plywood. Thus, the jury could have easily concluded that there were numerous materials better suited for use in such a precarious place. Furthermore, it is within the realm of common knowledge that ordinary window glass will break on strong impact. St. Mary's position that an expert should have testified on the safe architectural design of gymnasiums also fails. Thomas did not offer to prove St. Mary's failure to maintain its premises in a safe condition via a comparison study of surrounding school gymnasiums. Cf. *Dudley v. William Penn College*, 219 N.W.2d 484 (Iowa 1974). It is fallacious to assume that the jury established a standard of care on the basis of pure conjecture. Under these facts it can reasonably be inferred that St. Mary's failed to exercise due care in protecting Thomas from the potential

hazard of maintaining ordinary window glass in close proximity to the basketball court.

▮ The evidence established that Thomas was a business invitee of St. Mary's. Occupying this status, he was entitled to rely on the assumption that St. Mary's would exercise reasonable care for his safety. *Miller v. Baken Park, Inc.*, 84 S.D. 624, 175 N.W.2d 605 (1970). The evidence also exhibited that St. Mary's, through its agent and employees, knowingly installed breakable glass in a sidelight paneling. St. Mary's further admitted, through its agent Father Carroll, that no warnings were given concerning the make-up or propensity of the glass to break or shatter; nor was there any policy protecting basketball players from colliding with the glass, although there were protective mats on the premises. Neither party produced witnesses as to the dates of damage or repairs to the bottom glass panels; however, the jury could reasonably conclude in response to the evidence that two glass panels had previously been broken that St. Mary's knew or should have known of the danger in maintaining breakable glass in such close proximity to the basketball court and St. Mary's allowed this hazardous condition to exist. Therefore, the jury could reasonably conclude that St. Mary's breached its duty to maintain its premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation extended to Thomas and his teammates. Under the facts, the jury was capable, without assistance of experts, to decide the issue of St. Mary's negligence.

We conclude that the court properly denied St. Mary's motion for a directed verdict and correctly found that the evidence in the instant case was sufficient to warrant submission to the jury.

## II

St. Mary's urges that the court erred in entering judgment on the verdict which was not supported by sufficient evidence. St. Mary's argues that Dr. Gross' testimony failed to prove to a reasonable certainty that Thomas suffered permanent disability in both arms. Dr. Gross was asked the following question during his deposition which was read into the record: "[A]fter treating this patient and [since] this much time has passed, do you have an opinion based upon a reasonable medical probability as to whether or not Howard Thomas had suffered a permanent injury?" The doctor responded that in his opinion Thomas had suffered twenty-five percent permanent partial disability in both arms and unequivocally stated his reasons forthwith.

▮ St. Mary's maintains that an opinion prefaced upon a reasonable medical probability is not the equivalent of a reasonable certainty required by SDCL 21–1–10 in awarding damages for permanent injuries. St. Mary's objected to the permanent disability and disfigurement instruction as a basis for an award to Thomas.

The word "certain" appearing in the statute is not used in the absolute sense; its purpose is to insure that facts exist as shown by a fair preponderance of evidence which then affords a basis for measuring plaintiff's loss with reasonably certainty. *Carpenter v. Nelson*, 257 Minn. 424, 101 N.W.2d 918 (1960); *Peters v. Hoisington*, 72 S.D. 542, 37 N.W.2d 410 (1949). In assessing the future effects of injuries regarding the issue of damages, this court stated that "[m]edical experts are qualified to express their opinions based upon medical certainty or medical probability, but not upon possibility." *Koenig v. Weber*, 84 S.D. 558, 569, 174 N.W.2d 218, 224 (1970). Given the testimony of the physician who attended Thomas and whose opinion was based upon a reasonable medical probability, the matter of measuring damages was not left to mere speculation of the jury. Therefore, the court was justified in submitting the issue of permanent damages to the jury and the instruction was a correct application of the law.

▮ In conjunction with the assignment of error involving entering judgment on the verdict, St. Mary's contends that the award of $125,000 was excessive. In viewing the

record as a whole, we find no occurrences of any possible misconduct tending to arouse the passions or prejudice of the jury or any tactic calculated to elicit its pity or sympathy. *Weidner v. Lineback*, 82 S.D. 8, 140 N.W.2d 597 (1966). St. Mary's suggests the jury was actuated by passion, partiality, and prejudice on the basis that Thomas' injuries were not of the magnitude to seriously inhibit his present activities or future employment as indicated by the award. St. Mary's contention is factually unsupported. On the contrary, Thomas' attending physician placed his permanent disability at twenty-five percent in both arms because of the lack of sensation and coordination in his right arm and the lack of strength evidenced in his left arm. In addition, witnesses testified to Thomas' abilities before and after the accident. The jury was given the opportunity to personally observe the scarring and severity of Thomas' lacerations and awarded him damages based upon a life expectancy at the time of trial of 49.46 years. The verdict was approved by the trial judge who was in a position to accurately judge the forces that shaped the verdict of the jury and to determine if it was influenced in any sense by passion or prejudice. The trial court correctly ruled against St. Mary's motion for judgment notwithstanding the verdict and its alternative motion for a new trial.

### III

St. Mary's argues that the trial court erroneously refused its proffered instructions on assumption of risk, contending that the jury should have been permitted to determine whether or not Thomas, in the exercise of ordinary care, knew or should have discovered the danger of colliding into the glass panels.

■■ Ordinarily, the question of the assumption of risk is for the jury, provided there is evidence to support it. *Stenholtz v. Modica*, supra, and *Smith v. Community Co-operative Ass'n of Murdo*, 87 S.D. 440, 209 N.W.2d 891 (1973). It is well-established that in order to support an assumption of the risk defense under South Dakota

law, the defendant must show that the plaintiff not only had knowledge of the existence of the danger involved (actual or constructive), and an appreciation of its character, but additionally, that he voluntarily accepted such risk, i. e., Thomas had a sufficient amount of time, knowledge, and experience to make an intelligent choice. *Kessler v. Bowie Machine Works, Inc.*, 501 F.2d 617 (8th Cir. 1974); *Stenholtz v. Modica*, supra; *Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654 (1958).

■ St. Mary's presented no evidence sufficient for a jury determination on the assumption of risk defense. St. Mary's failed to prove that Thomas either knew or should have known of the dangerous situation the glass panels presented. St. Mary's fallaciously reasons that Thomas should have appreciated the obvious danger involved in colliding into the glass panels and therefore, assumed the risk of said injury. Assuming, arguendo, that the danger was known or obvious,. St. Mary's nevertheless owed a duty to Thomas, as an invitee, to warn or take other precautionary measures to protect him. *Stenholtz v. Modica*, supra. Thomas was not obliged to make a critical examination of the basketball court that he was about to use in order to determine whether or not it was safe. On the contrary, he had the right to assume that those in charge had exercised due care in the matter of inspection and had taken the proper precaution for the safety of the players. *Miller v. Baken Park, Inc.*, supra; *DeGooyer v. Harkness*, 70 S.D. 26, 13 N.W.2d 815 (1944).

The court properly charged that Thomas did not assume the risk that the glass panel, in such close proximity to the basket, would be of ordinary glass unable to withstand impact. Reasonably assuming that the glass was safe, Thomas was unappreciative of the danger produced by the use of window glass. This glass panel was opaque, not transparent, and did not indicate to either the sixteen-year-old boy or any of the adult officials that a hazard existed. This was the first time that Thomas had played on the court. Although he witnessed one

game played earlier that evening, at no time was he apprised of the glass panel's inability to withstand impact. Cf. *Maltz v. Board of Education of New York City*, 32 Misc.2d 492, 114 N.Y.S.2d 856, *aff'd* 282 App.Div. 888, 124 N.Y.S.2d 911 (1952), where a basketball player ran into a door jamb in a brick wall that he knew was there and had run into on prior occasions. Therefore, it cannot be said that Thomas possessed either actual or constructive knowledge sufficient to compel a finding that he had voluntarily assented to incur that risk.

Furthermore, while Thomas may have assumed certain risks of danger inherent in the playing the game of basketball against St. Mary's, he did not assume the risk that the glass panel located in such close proximity to the basket would break upon impact. Since knowledge and appreciation of a particular risk are essential to the defense of assumption of risk, a plaintiff must only be held to assume the risk he appreciates, not the risk which he does not. Restatement (Second) of Torts § 496c, comment i at 573 (1965).

St. Mary's also failed to show that Thomas had a sufficient amount of time, knowledge, and experience to make an intelligent choice in assuming said risk. St. Mary's contends that Thomas was availed of a means to resist injury by directing himself toward the open doorway a couple of feet away. According to the testimony of eyewitnesses, however, Thomas went out of bounds and struck the panel almost instantly. Clearly, Thomas was unable to stop before striking the panel and had no time to consider taking a less hazardous route. As St. Mary's failed to prove all three elements, the court committed no error in refusing St. Mary's requested instruction on assumption of risk.

### IV

■ St. Mary's contends that the court erred in instructing the jury on comparative negligence on the grounds that Thomas' alleged negligence was (1) at least comparable and (2) as a matter of law more than slight. We disagree. Based upon the rec-

ord, it cannot be concluded, as a matter of law, that Thomas was contributorily negligent or even if Thomas was in fact contributorily negligent, that his negligence was more than slight when compared with the negligence of St. Mary's. Whenever both parties to a lawsuit could, under the evidence, be held negligent in causing the injuries of which plaintiff complains, it is proper to instruct on comparative negligence. *Robinson v. Mudlin*, 273 N.W.2d 753 (S.D. 1979). Once both parties could be found negligent, the comparative negligence of the parties became a question of fact solely within the province of the jury. *Robinson v. Mudlin*, supra.

■ We conclude that once the court determined that it would instruct the jury on contributory negligence, it was correct to also instruct on comparative negligence. Viewing the evidence in this case, the trial court was liberal in granting an instruction on contributory negligence. There was competent evidence to support the jury determination on this issue, and St. Mary's cannot be heard to complain on the granting of the comparative negligence instruction.

### V

■ St. Mary's predicates its final assignments of error on the trial court's (1) exclusion of the offered testimony of a glass installer, and (2) refusal to give its requested instructions pertaining to the use of safety glazing materials in certain buildings required under SDCL 34–28–5 to SDCL 34–28–10. The trial court properly rejected the offered testimony and instructions on this point. St. Mary's contention that the glass structure was in compliance with the statute is not determinative of this case. This Act only applied to installations or replacements made after June 30, 1974, and did not apply to contracts awarded, pursuant to an invitation for bids, on or before June 30, 1974. St. Mary's gymnasium was constructed in 1957 and the cause of action arose in 1973. Therefore, the trial court properly ruled on these two issues.

The judgment is affirmed.

All the Justices concur.