STATE OF NORTH CAROLINA v. WILSON ELLIS COOKE.

(Filed 20 June, 1967.)

**1. Automobiles § 72—**

Testimony tending to show that defendant was intoxicated 15 to 20 minutes after an accident occurring while defendant was driving on a public highway, is sufficient to overrule motion for nonsuit in a prosecution for driving while intoxicated.

State v. Cooke.

**2. Same;   Criminal Law § 55—**

A Breathalyzer test of defendant made by a person meeting the qualifications of the statute and making the test in the manner required by the statute, is competent in a prosecution for driving a motor vehicle while under the influence of intoxicating liquor, but for the test to cast any light on ·defendant's condition at the time of the offense it must have been timely made and the defendant must not have consumed alcohol between the occurrence in question and the time of the test, since the Breathalyzer can measure the amount of alcohol in a person's bloodstream only as of the time the test is given. G.S. 20-138, G.S. 20-139.1.

**3. Same;   Criminal Law § 32—**

The provision of G.S. 20-139.1 that a competent Breathalyzer test showing .1 per cent or more by weight of ·alcohol in a person's blood should raise the "presumption" that such person was under the influence of intoxicating liquor does not create a conclusive presumption or compel the jury to find the fact of intoxication, in the absence of evidence that such person was not intoxicated, but merely creates a permissible inference or a *prima facie* case authorizing the jury to find the fact of intoxication.

**4. Same;   Automobiles § 74—   Presumption created by G.S. 20-139.1 merely authorizes, but does not compel, an affirmative finding.**

Defendant's testimony was to the effect that he had drunk a small quantity of intoxicating liquor shortly before the accident in question and that between the time of the accident and the making of a Breathalyzer test he drank a quantity of intoxicating liquor. The State introduced in evidence the result of a Breathalyzer test made within an hour of the collision showing a concentration of .2 per cent of alcohol in defendant's bloodstream. *Held:* An instruction, as to the presumption created by the statute, without charging the jury that such presumption does not preclude them from finding that defendant was not intoxicated, and without applying the law to defendant's evidence by instructing the jury that if they found that defendant had drunk a quantity of intoxicants after the collision the Breathalyzer test would create no presumption that he was under the influence of intoxicants at the time of the collision, is prejudicial error. G.S. 1-180.

APPEAL by defendant from *Froneberger, J.,* 31 January 1966 Mixed Session of CATAWBA, docketed in the Supreme Court as Case No. 329 and argued at the Fall Term 1966.

Defendant, a long-distance truck driver, was tried and convicted in the Municipal Court of the City of Hickory upon a warrant which charged that, on 10 November 1965, he unlawfully operated a motor vehicle upon a public street of Hickory while under the influence of intoxicating liquor, a violation of G.S. 20-138. Upon conviction, defendant appealed to the Superior Court, where he was tried *de novo.*

Evidence for the State tended to show: Between 8:30 and 8:45 p.m., J. C. Little was traveling west on First Avenue; defendant was driving his automobile east. It was raining. As the two cars approached the Snack Bar, a restaurant located on the north side of

the street, defendant — without giving any signal of his intention to do so — suddenly turned to his left, across the path of the Little automobile. The cars collided in Little's lane of traffic. Little remained in his automobile, and defendant came over to talk to him. When defendant asked Little if he did not observe his signal, Little said defendant had given no signal. Defendant replied that he had signaled and that he had "a couple of witnesses." Upon receiving this information, Little got out to find the witnesses but was unable to do so. Little noticed nothing abnormal about defendant and detected no odor of alcohol on his breath. Both he and defendant remained at the scene until Officer Gadfield arrived 10-15 minutes after the accident. During that period of waiting, he did not see defendant drink any intoxicants.

When Officer Gadfield arrived, he talked to the two drivers, and, after observing defendant "a little bit," he arrested him for public drunkenness and searched him. In his pocket he found a partially eaten onion. Defendant told him that he had been drinking whiskey and beer. When another patrol car came by, the officer sent defendant to jail. At the jail, O. M. McGuire, who has been licensed by the State Board of Health since 11 March 1965 to operate a Breathalyzer and whom the court found to be "an expert in the use and operation of the instrument known as a Breathalyzer," first observed defendant at 9:08 p.m. In his opinion, defendant was "highly under the influence." After testing the machine, which he found to be in good working order, McGuire gave defendant the Breathalyzer test at 9:25 p.m. He testified, without objection, as follows:

"The test result on the blood alcohol of the defendant was .20 per cent. . . . (The time required for alcohol to show up on the Breathalyzer) would depend on the contents of the man's stomach. . . . There is no way for the Breathalyzer to tell when this man drank any alcoholic beverages to cause his blood content to contain alcohol. This machine tells how much is in the blood at the time he is tested. If a person had an empty stomach he would have some alcohol in his blood soon. . . . Every individual will get some in his bloodstream in 30 to 90 minutes."

The testimony of defendant, the only witness for the defense, tended to show: At 4:00 p.m. on the day before the accident, defendant and his relief driver left Boston, Massachusetts, to drive to Charlotte, North Carolina, where they arrived at 6:30 p.m. on 10 November 1965. Defendant immediately left in his automobile for his home in Hickory. There, his first stop was Johnson's Service Sta-

tion, where "a Federal man, an ATU Agent," gave him a drink of whiskey — about one inch in a Dixie cup. He had not eaten since that morning; so he then went to his home to eat. Finding his wife away, he left for the Snack Bar to get a sandwich. At the time of the accident, there was nothing wrong with him. Thereafter, however, he did have something to drink, and he was under the influence when he arrived at the jail. Defendant testified:

> "(A)fter the accident I got into the car (which pulled up there) with two men. . . . While I was in their car I had two drinks of vodka. . . . One of the men gave me the onion the officer talked about. I ate some of the onion. . . . I do not know the two men who gave me the drink. . . . I never saw them again."

The jury's verdict was "guilty as charged." From the judgment imposed, defendant appeals.

T. W. Bruton, Attorney General; Bernard A. Harrell, Assistant Attorney General, for the State.
A. Terry Wood for defendant.

SHARP, J. The State's evidence tending to show defendant's intoxication within 15-20 minutes after the accident was plenary to overrule the motion for nonsuit unaided by the results of the Breathalyzer test. State v. Collins, 247 N.C. 244, 100 S.E. 2d 489; State v. Smith, 240 N.C. 99, 81 S.E. 2d 263; State v. Dawson, 228 N.C. 85, 44 S.E. 2d 527; cf. State v. Kelly, 227 N.C. 62, 40 S.E. 2d 454.

The result of a Breathalyzer test, when the qualifications of the person making the test and the manner of making it meet the requirements of G.S. 20-139.1, is competent evidence in a criminal prosecution under G.S. 20-138. State v. Cummings, 267 N.C. 300, 148 S.E. 2d 97; State v. Powell, 264 N.C. 73, 140 S.E. 2d 705. For a full explanation of the manner in which the Breathalyzer operates, see Watts, Some Observations on Police-Administered Tests for Intoxication, 45 N. C. L. Rev. 35, 64-68, 86-91. Watts describes the Breathalyzer as "an instrument of great sophistication." Id. at 65. (According to the instruction manual accompanying the machine, "halitosis, onions, garlic, etc." do not cause it to err!)

Defendant has not challenged the admissibility of the result of the Breathalyzer test which was administered to him within an hour of the collision which brought about his arrest. He assigns as error, however, that the judge failed to give the jury adequate instructions on the presumption created by G.S. 20-139.1 in that he omitted to

tell the jury (1) that the presumption was rebuttable and (2) that the condition of the defendant at the time of the test must be correlated with his condition at the time he was operating the motor vehicle on the public highway in order for the test to be relevant. This is defendant's Assignment of Error No. 6.

In portions pertinent to this case, G.S. 20-139.1 provides:

"§ 20-139.1 Results of chemical analysis admissible in evidence; presumptions. — (a) In any criminal action arising out of acts alleged to have been committed by any person while driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's breath shall be admissible in evidence *and shall give rise to the following presumptions:*

"If there was at that time 0.10 per cent or more by weight of alcohol in the person's blood, *it shall be presumed that the person was under the influence of intoxicating liquor.*

"Per cent by weight of alcohol in the blood shall be based upon milligrams of alcohol per one hundred cubic centimeters of blood.

"The foregoing provisions of subsection (a) of this section shall not be construed as limiting the introduction of any other competent evidence, including other types of chemical analyses, bearing upon the question whether the person was under the influence of intoxicating liquors.

\* \* \*

"(c) The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any test administered at the direction of a law enforcement officer." (Emphasis added.)

After telling the jury that the Breathalyzer is an instrument which mechanically and chemically analyzes the quantity of alcohol which a person has in his bloodstream by measuring the alcoholic content of his breath, the court instructed the jury as follows:

"The officer testified, as I recall, that the defendant's test showed that he had an alcoholic content in his bloodstream by the Breathalyzer test as .20. The State has offered into evidence the statute under which these tests are given, and the statute reads if there was at the time 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person is under the influence of intoxicating beverages."

The foregoing constitutes the judge's only explanation of the statute to the jury. His only other reference to the Breathalyzer test appears as a statement of the State's contentions: "You ought to believe the test given to him; the condition of the defendant immediately after the accident upon the arrival of the officers, and that the State contending that it has borne the burden of proof beyond a reasonable doubt."

This Court has not heretofore been called upon to construe the effect of the presumption created by G.S. 20-139.1. The word *presumption*, as lucidly pointed out by Stansbury, N. C. Evidence § 215 (2d Ed., 1963), has been used in different senses, but always upon the premise that when a certain basic fact is established another (presumed) fact is assumed or inferred. The following situations illustrate the varying uses of the word *presumption:* (1) If evidence to disprove the presumed fact will not be heard, we have a rule of substantive law, sometimes loosely called "a conclusive presumption"; (2) If the basic fact authorizes, but does not compel, the jury to find the assumed facts, we have a permissible inference or *prima facie* evidence; (3) If the basic fact compels the jury to find the assumed fact unless and until sufficient evidence of its nonexistence has been introduced, we have a true presumption, and, in the absence of sufficient proof to overcome it, the jury must find according to the presumption. See the cases cited in the footnotes to § 215, *Ibid.*

Obviously, in G.S. 20-139.1, the General Assembly did not intend to create a so-called conclusive presumption, since it specifically provided that "any other competent evidence, including other types of chemical analyses," bearing upon the issue of defendant's intoxication may be introduced. Nor do we think that the legislature intended to shift the burden of proof to a defendant whose Breathalyzer test shows a blood alcohol level of 0.10 per cent or more to prove that he was not under the influence of intoxicating liquor at the time charged. When the legislature has intended to shift the burden of proof to a defendant, it has said so specifically. For instance, G.S. 14-239, after making it a crime for any sheriff, deputy sheriff, coroner, constable, or jailer negligently or wilfully to permit a convict or a prisoner charged with crime to escape from his custody, provides: "It shall lie upon the defendant to show that such escape was not by his consent or negligence, but that he used all legal means to prevent the same, and acted with proper care and diligence. . . ." G.S. 90-109 provides that in any prosecution under the Narcotic Drug Act it shall not be necessary for the State to negate any exception, excuse, proviso, or exemption contained in

Article 5 and that "the burden of proof of any such exception, excuse, proviso, or exemption shall be upon the defendant." G.S. 90-113.4 contains an identical provision with reference to prosecution under Article 5A, which deals with barbiturate and stimulant drugs. G.S. 106-266.21 makes it unlawful for any distributor, producer, or retailer to sell milk below cost for the purpose of injury or destroying competition, declares the sale of milk below cost to be *prima facie* evidence of a violation of the statute, and puts "the burden of rebutting the *prima facie* case" on the person charged. See *Milk Comm. v. Stores*, 270 N.C. 323, 154 S.E. 2d 548.

We hold that in G.S. 20-139.1, the General Assembly used the word *presumption* in the sense of a permissive inference, or *prima facie* evidence. A Breathalyzer test (otherwise relevant and competent) which shows 0.10 per cent or more by weight of alcohol in a defendant's blood will carry the State's case to the jury for its determination of whether defendant was under the influence of intoxicating liquor at the time charged. Despite the results of the test, the jury is still at liberty to acquit defendant if they find that his guilt is not proven beyond a reasonable doubt, and the court should have explained this to the jury. On the force and effect of the "presumption" created by G.S. 20-139.1, the judge should have charged the jury in accordance with the opinion in *State v. Bryant*, 245 N.C. 645, 97 S.E. 2d 264, wherein Rodman, J., collected and analyzed the cases dealing with *"prima facie* or presumptive evidence" created by statute.

A New Jersey statute (N. J. Stat. Ann. 39:4-50.1) authorizes the clinical analysis of body substances to determine the amount of alcohol in a motor-vehicle operator's blood. It also, in language identical with that of G.S. 20-139.1, creates "presumptions" with reference to varying percentages of alcohol in the blood. The Supreme Court of New Jersey in *State v. Johnson*, 42 N.J. 146, 199 A. 2d 809, held that the words *it shall be presumed* were equivalent to *prima facie* proof. The Supreme Court of Kansas, construing a similar statute, reached the same conclusion in *State v. Bailey*, 184 Kan. 704, 339 P. 2d 45.

Defendant concedes that he was under the influence of intoxicants at the time he took the Breathalyzer test. His defense is that he consumed the liquors which produced his intoxication after the collision. The State's evidence tended to show that defendant drank nothing after the accident. The Attorney General, in his brief, argues that defendant's testimony that, while he was awaiting the arrival of the police immediately after the collision, he accepted from two strangers two drinks of vodka and an onion, which he used as a

chaser, "taxes credibility to its limit." Be that as it may, it was defendant's evidence, and he was entitled to have the judge apply the law to it.

Obviously, the Breathalyzer can measure only the amount of alcohol which is in a person's blood *at the time* the test is given. Therefore, the presumption or inference which G.S. 20-139.1 raises when the test shows 0.10 per cent or more of blood alcohol relates only to *the time of the test*. Since it is the degree of intoxication at the time of the occurrence in question which is relevant, it is undoubtedly true that the sooner after the event the test is made, the more accurate will be the estimate of blood-alcohol concentration at the time of the act in issue. *State v. Fornier*, 103 N.H. 152, 167 A. 2d 56; Donigan, Chemical Tests and the Law, 45 (2d Ed., 1966). For the test to cast any light on a defendant's condition at the time of the alleged crime, the test must have been timely made. *State v. Webb*, 265 N.C. 546, 144 S.E. 2d 619.

"It is a matter of common knowledge that a person does not become drunk or materially under the influence of intoxicating liquor immediately after drinking an immoderate quantity of it. Slightly under the influence of intoxicating liquor precedes the grosser forms of intoxication." *State v. Hairr*, 244 N.C. 506, 510, 94 S.E. 2d 472, 475. The rate at which alcohol is absorbed into the bloodstream depends upon the contents of the stomach at the time the intoxicant is imbibed. According to Donigan, *supra* at 44, 282-83, if the stomach is empty, total absorption occurs 40-70 minutes after the final drink. If much food is in the stomach, it may take two, or even three, hours. The rate at which alcohol is eliminated from the system has also been scientifically determined, and — by the process of extrapolation — from the estimated blood alcohol at a certain time an expert can calculate the estimated blood alcohol at an earlier time. Donigan, *supra* at 45, 46; *Wimsatt v. State*, 236 Ind. 286, 139 N.E. 2d 903; *State v. Baron*, 98 N.H. 298, 99 A. 2d 912; *Toms v. State*, 95 Okla. Crim. 60, 239 P. 2d 812. In this case, Mr. McGuire did not attempt by the process of extrapolation to say when defendant had last consumed alcohol, but he did say that every individual will have some alcohol in his blood within 30-90 minutes after taking it into his stomach.

Assuming the truth of the State's evidence, the result of the Breathalyzer test was highly incriminating. Where defendant had consumed no alcohol during the interval between the accident and the test, a breath test for alcohol made three hours after the collision was held to have probative value in *Stacy & Rusher v. State*, 228 Ark. 260, 306 S.W. 2d 852. In *Davis v. State,* 165 Tex. Crim. 622,

310 S.W. 2d 73, it was held that a test given more than an hour after the accident was relevant.

Assuming the truth of defendant's evidence, the "one-inch" drink which the "Federal man" gave him at the filling station did not affect him appreciably; the drinks which did were those the two strangers gave him within the 10-15-minute interval between the collision and the officer's arrival. It was, therefore, incumbent upon the court to charge the jury that the Breathalyzer test has probative value only insofar as it sheds light on defendant's condition at the time of the alleged crime, and that, if they found that defendant drank the intoxicants *after* the collision, the Breathalyzer test would create no presumption that he was under the influence of intoxicants at the time of the collision, and the test would be totally irrelevant to the inquiry. Instead, the court merely told the jury that the State contended that it "ought to believe the test given to him."

The court's charge did not meet the mandatory requirements of G.S. 1-180. Assignment of Error No. 6 is sustained.

New trial.