STATE, Respondent v. THUNDER HORSE, Appellant

(177 N.W.2d 19)

(File No. 10725. Opinion filed May 12, 1970)

**David V. Vrooman,** Sioux Falls, for appellant.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, for respondent.

RENTTO, Judge.

In a joint information this defendant and Jessie Zimmerman, both Indians, were charged with having conjointly committed the crime of robbery in the first degree. They were tried jointly with separate appointed lawyers representing them. At the conclusion of the state's case a verdict of not guilty was directed as to Zimmerman. Defendant

Thunder Horse was found guilty by the jury and sentenced to five years imprisonment in the penitentiary. He appeals.

His trial lawyer, who is not his appellate counsel, filed a timely motion asking that certain evidence which the state had in its possession be suppressed because it had been obtained by an unreasonable search and seizure. This motion was heard before trial on the testimony of two police officers. It was denied. This action by the court is the basis of his principal appellate complaints. He also urges as prejudicial error, testimony of a police officer concerning statements made to the officer by his codefendant Zimmerman, implicating him in the commission of the offense charged, and the admission of several exhibits.

During the evening of Saturday, November 20, 1968, the victim of the robbery, George Ebright, a construction worker, was in the Old Style Bar in Sioux Falls. He cashed his weekly pay check there and had a few drinks. The building occupied by this business is situated on the west side of Main Avenue at the 7th Street corner. Its front door opened onto that thoroughfare. At the rear of the structure is a parking lot and an alley.

He left the bar at about 11 p. m. that evening going out the back door. The record suggests that he had a car back there. As he stepped out he saw the defendant Thunder Horse who was standing near a car. He spoke to Ebright and without provocation hit him alongside the head with his fist. This blow stunned the victim and caused him to fall down. He claims to have been additionally beaten as he lay on the ground.

When he regained consciousness, which apparently was very soon after he was struck, he discovered that his wallet which he carried in his shirt pocket, was missing. When he left the bar it contained about $70 in cash. He also noticed a young man named Mager pouring water into the radiator of a car. Thunder Horse was standing alongside that car when Ebright first saw him. It drove away rather soon after Ebright regained his composure. As it did he saw Zimmerman going to the car. As the car left Ebright shouted at them to call the police.

At this juncture three young men appeared on the scene. They had just come from a club located directly north from this alley across 7th Street and were walking south to where their car was parked in the alley. Coming across the side street they heard a man hollering "stop" and beating on a car that was leaving the area. It appeared to them to have three people in it. They then noticed the victim and tried to follow the car a short distance, but were unable to keep up with it. As they came back to the scene a police car drove up. This was officer McKelvey. He' had been told about the beating going on behind the Old Style Bar by a citizen. He was then one-half block away and drove there promptly.

Officer McKelvey was stopped in the alley by these three youths. They reported their observations and told him that the victim had been beaten by three male individuals who left the scene in a light colored '55 or '56 Buick. They informed him that two of these men were Indians and one was white. Before talking with these boys McKelvey had observed the victim who bore evidence of having been beaten. He told the officer that two of the men who fled were Indians and that his billfold and its contents had been taken.

After hearing the description of the parties and the car they were in McKelvey, by police radio promptly dispatched other policemen to the 400 block of North Spring Street in the residential area. He had a previous acquaintance with Zimmerman and knew that he had lived in that area. He then went to the area himself. When he arrived there a 1956 white Buick was parked in front of the residence at 406 N. Spring and two fellow officers were on the scene. Mager, the white man who owned the car, was out of it and Zimmerman was just getting out. Thunder Horse was still in it. The car fit the description of the automobile described to him and two of the occupants resembled the two Indians that he had been told about.

Thunder Horse had blood on his hands, jacket, pants and shoes. McKelvey arrested the three occupants of the car. At that time he looked into it briefly and searched Thunder Horse's pockets and clothing for weapons. It was then about 11:30 p.m., twenty minutes had elapsed since

he reported the incident over the police radio. He arrested Thunder Horse and Mager for vagrancy and Zimmerman for vagrancy and public intoxication. Apparently a tow truck was summoned to haul the car away and McKelvey and another officer prepared to take the arrested individuals to the police station. After they arrived at the police station Thunder Horse was informed that he was being held for robbery.

■ As the two officers and the three under arrest were preparing to leave the scene another policeman, Officer Folkerts, searched the interior of the car. In the rear seat he found a leather billfold, stuck down between the seats, bearing the name of the victim. There was no money in it. Apparently it is a regular police practice in Sioux Falls to search a car for items of personal property before surrendering it to be towed away. This billfold was one of the items of evidence which Thunder Horse sought to have suppressed. It was admitted in evidence over his objection that it had been illegally obtained. The burden of establishing such illegality is on the party asserting the claim. State v. Merrill, 82 S.D. 609, 152 N.W.2d 349.

The state admits this was a warrantless search and no claim is made that it was consented to. Consequently, if it is to be upheld it must be on the theory that it was incident to a lawful arrest. State v. McCreary, 82 S.D. 111, 142 N.W.2d 240. At the time of this occurrence our pertinent arrest provisions appeared as SDC 1960 Supp. 34.1609. They are now contained in SDCL 23-22-7 and 23-22-8. The first of these provides that a peace officer may arrest a person without a warrant:

"(1) For public offense committed or attempted in his presence;

(2) When the person arrested has committed a felony, although not in his presence;

(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it;"

The later section authorized such arrest at night on reasonable cause, even though it afterwards appears that a felony has not been committed.

■ Officer McKelvey after talking to Ebright and the three young men in the alley back of the Old Style Bar that night, had reasonable cause to believe that the crime of robbery, a felony under our law, had been committed and that the one who committed it fled the scene in a light colored '55 or '56 Buick. About twenty minutes later when he saw the 1956 white Buick parked on North Spring Street and the three who had been occupants of the car, he had probable cause for believing that Thunder Horse had committed it. The facts and circumstances within his knowledge and those of which he had reasonably trustworthy information were sufficiently strong to warrant a reasonably cautious man in believing that he had probably committed the offense under investigation. State v. Hermandson, 84 S.D. 208, 169 N.W. 2d. 255.

■ Under our statutes when an officer arrests one without a warrant he should inform him of his authority and the cause of the arrest. SDCL 23-22-9. While officers would be well advised to honor these requirements, the failure to do so does not invalidate the arrest. In Re Application of Kiser, 83 S.D. 272, 158 N.W.2d 596, we held that this section did not prescribe a particular ritual to be followed. In Klingler v. United States, 8 Cir., 409 F.2d 299 involving a felony arrest by police officers of Sioux Falls, executed in a manner substantially similar to this one, that court said:

> "The evident purpose of giving notice of the authority and cause for arrest is to establish a procedure that is likely to result in a peaceable arrest. Here, of course, Klinger knew that he was dealing with the Sioux Falls police. The officer stated a cause of the arrest. Even though the stated ground proved to be a mistake, Klinger had notice that the officers purported to act under authority of the law. Under these circumstances, we believe the requirements of the South Dakota statute were satisfied and that the arrest was, therefore, legal."

Being satisfied the arrest was not made to create an excuse for a search, it held that the arrest was not rendered invalid because the arresting officer notified Klingler that he was under arrest for vagrancy—rather than for armed robbery. When we reviewed the same arrest procedure, involving a state prosecution in State v. Klingler, S.D., 173 N.W.2d 275, we approved that court's reasoning and adopted its holding. They are equally applicable here.

■ Having determined that the arrest was lawful we reach the contention that it was not incident to the arrest. There exists no precise formula for determining whether a search was incident to an arrest. It should be determined by looking at the facts and circumstances of each case in a common sense and realistic fashion. That was our approach in State v. McCreary, supra. Viewing the circumstances of this search in that manner we conclude that it was incident to the arrest. It was substantially contemporaneous with it, United States v. Skinner, 8 Cir., 412 F.2d 98, and was not remote from it either in time or place. Sipera v. State, Minn., 175 N.W.2d 510. Under the circumstances we regard it as a reasonable search. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. Consequently, it is our holding that the exhibit was properly admitted.

It is argued that the search violates the holding in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. We do not share that view. In that case the search of a house was involved while we are here concerned with the search of an automobile. The portion of that opinion which does refer to the search of automobiles is contained in footnote 9.

In State v. Klingler, supra, we construed that to sanction the search of an automobile under circumstances much the same as those in this case. We there said that the validity of such a search "may therefore be based on probable cause that defendant was the robber and the car he occupied was used in the robbery". See also Dyke v. Taylor Implement Mfg. Co., Inc., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538. Incidentally, defendant's position assumes that Chimel must be given retroactive effect. We are not advised that the United States Supreme Court has so held. In fact that court avoid-

ed deciding the issue in Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732.

■ Later that night Thunder Horse and Zimmerman, after being fully advised of their rights, were each separately interrogated and a search made of their persons at the police station and the county jail. Thunder Horse was placed in the lieutenant's room of the police headquarters where he stayed for awhile by himself. No money was found on his person when he was searched, but a $5.00 bill was found in the waste paper basket in that room while he was still there. Very soon after he was taken from the room a wad of currency, $26 in all, was found in an unlocked desk drawer in the same room in close proximity to where he had been seated. These were admitted in evidence as Exhibits 7 and 8 over his objection of an insufficient foundation. We think the court did not abuse its discretion in admitting them. In view of the surrounding circumstances the jury could rationally believe that the bills had been put there by him to rid his person of them while he was in the room alone. Currency isn't usually left around in that fashion.

■ During the course of Zimmerman's interrogation and search he told the officer that Thunder Horse had given him $21 in the car back of the Old Style Bar that night. He gave a $1.00 bill, Exhibit 6, to the officer and told him he had received it from his codefendant, but stated that he had lost the $20 bill. Later on a search of the scene of the offense failed to find the bill. Subsequently the $20 bill, Exhibit 10, was discovered on Zimmerman's person.

Thunder Horse objected to the testimony of the officer concerning the inculpating statements and the admission of the exhibits in evidence, on the ground that they were hearsay in nature as against him, and deprived him of his right to cross-examine the witness. The statements and the exhibits were admitted with an admonition limiting their consideration against only Zimmerman. When the case was given to it, the jury was instructed that such matters could not be considered for any purpose against Thunder Horse. The complaint here is that their admission violated the

rule laid down in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

In that case Bruton and his codefendant Evans were jointly tried for postal robbery. Evans chose not to testify. A postal inspector testified that Evans made an oral confession that he and Bruton committed the robbery. The jury was instructed to disregard Evans' confession in determining Bruton's guilt. His conviction was reversed because the admission of the testimony was held to have violated Bruton's right of cross-examination which was his by virtue of his constitutional right to be confronted with the witnesses against him.

The opinion makes clear that the rule announced does not condemn all situations where this appears. Whether the cause must be reversed depends on the circumstances of the case under review. It is therein written "It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information." But because the statements of his codefendant were such "powerfully incriminating extrajudicial statements" the court felt that there was a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements" in determining Bruton's guilt. This case does not present that risk.

The rationale of the Bruton case is perceptively analyzed in Slawek v. United States, 8 Cir., 413 F.2d 957. Its teaching is that the Bruton rule requires reversal in only those cases where it appears the questioned statements, in the light of the corroborating record, are powerfully incriminating and such as to create a substantial risk that the jury cannot or will not follow the limiting instructions. In other words, only when there is real danger its effect will not be harmless in nature. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Viewed against the evidence mentioned herein of Thunder Horse's involvement in the charged offense, we feel that the admissions complained of do not rise to that dignity.

Furthermore, in presenting his defense Thunder Horse called Zimmerman as a witness on his behalf, but made no in-

quiry concerning the admissions complained of. It has been held that this opportunity to examine provides the required constitutional confrontation. United States v. Boone, 3 Cir., 401 F.2d 659. See also Parker v. United States, 9 Cir., 404 F.2d 1193. If Zimmerman had proved to be an unfriendly, evasive, adverse or hostile witness he would have been subject to cross-examination by the appellant. Wharton's Criminal Evidence, 12th Ed., § 859. It seems to us that in this setting his claim of having been denied the right of cross-examination is devoid of merit.

The other errors asserted are without substance. They seem to have been largely abandoned. In fact some of them are not here for review because they were not presented to the trial court. Accordingly, the judgment appealed from is affirmed.

All the Judges concur.