STATE, Respondent v. SPRY, Appellant

(207 N.W.2d 504)

(File No. 11053. Opinion filed May 17, 1973)

Ronald Clabaugh, of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

David Stanton, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Gordon Mydland, Atty. Gen., Pierre, S.D., on the brief.

WINANS, Justice.

The defendant, Steven Spry, was tried before a jury and found guilty of second degree manslaughter. From the judgment entered thereon he appeals. We affirm.

The record discloses that on June 3, 1971, at about 2:00 A.M., the defendant was enroute in his automobile from Lead to Deadwood when he was involved in a head-on collision with another car. Defendant was alone in his automobile at the time. There were three people in the other automobile, two of whom died as a result of the accident. About an hour and a half after the incident, two police officers visited the defendant at the hospital where he was being treated. The defendant was placed under arrest for driving while intoxicated after one of the officers detected alcohol on his breath. A sample of his blood was taken at that time. It was subsequently discovered that the blood sample contained between .20 and .21 percent alcohol by weight, which was more than sufficient to raise the statutory presumption that the defendant had been driving while under the influence of alcohol.

At the trial, the state relied heavily on the results of the blood alcohol test as well as the testimony of Clyde McCue, a highway patrolman who had investigated the accident. McCue testified as to what he observed at the scene of the accident. After being duly qualified as an expert, he was also permitted to express an opinion as to where the place of impact had been in the collision between the two automobiles. His opinion was that the place of impact was in the lane across the center line from where the Spry automobile had the right to travel.

On appeal, the defendant contends that the trial court committed reversible error in: (1) permitting McCue to testify as to his opinion concerning the place of impact between the two automobiles; (2) denying the defendant's motion to suppress the results of the blood test when defendant was not informed of the death of Don Smith which fact was known to the officers at the time the blood sample was requested; (3) instructing the jury on the presumption of intoxication; (4) refusing to instruct the jury that the burden of proof was upon the state to establish that nothing was added to the blood sample in its taking which would affect the accuracy of the test for alcohol content; and (5) denying defendant's motion to suppress the results of the blood alcohol test when the blood withdrawn for the test was not withdrawn incident to a lawful arrest.

With respect to the first contention, the defendant does not dispute the qualifications of the witness to testify as an expert. Rather, the defendant argues that the expert opinion evidence should not have been permitted for the reason that the subject matter did not require an expert opinion and that the opinion invaded the province of the jury. Whether or not an expert opinion should be permitted is a question to be determined by the trial court in the exercise of sound discretion. Kleinsasser v. Gross, 1964, 80 S.D. 631, 129 N.W.2d 717. The trial court's ruling on the matter will not be disturbed in the absence of a clear abuse of discretion. We find no such abuse of discretion in the present case.

As a general rule, a duly qualified expert witness should be permitted to express an opinion upon a subject whenever the

opinion will be of assistance to the jury in reaching a correct conclusion. Wentzel v. Huebner, 1960, 78 S.D. 481, 104 N.W.2d 695; Smith v. Gunderson, 1971, 86 S.D. 38, 190 N.W.2d 841[1]; Rabata v. Dohner, 1969, 45 Wis.2d 111, 172 N.W.2d 409. Such a situation arises whenever an intelligent evaluation of the facts would be difficult without the application of the expert's peculiar knowledge or experience. Conversely, if the facts are equally available to the jury, and understandable by them, then the opinion of an expert is of no assistance and it should be rejected. Kleinsasser v. Gross, supra.

In the present case, it would have been exceedingly difficult for the jury to make a determination as to the place of impact without the benefit of expert opinion testimony. The testimony of the defendant and the surviving passenger from the other car left much to be desired. Likewise, evidence concerning factors present at the scene of the accident meant little to the jury. Thus, under the circumstances of this case the trial court was justified in concluding that McCue's opinion would be beneficial to the jury in reaching the correct conclusion.

Furthermore, McCue's opinion was not objectionable as "usurping the province of the jury" merely because it embraced an ultimate issue of fact.[2] This is the modern and logical view. See 31 Am.Jur.2d, Expert and Opinion Evidence, § 22, p. 518. The writer at pages 520 and 521 states:

> "Logically, there would appear to be no wrongful invasion of the province of the jury in permitting an expert to express his opinion upon an ultimate fact in a case where expert opinion is necessary to assist the jury in reaching the right determination. In such case, as in the case of an eyewitness to a decisive fact, if the jury are satisfied of the trustworthiness of the evidence, the

---

1. This is the underlying rule of all the cases cited for this issue. It is also the federal rule. See Proposed Rules of Evidence For the U.S. District Courts and Magistrates, Rule 702. See also 31 Am. Jur.2d, Expert and Opinion Evidence, §§ 18-20; Lofton v. Agee, 8 Cir., 303 F.2d 287 (1962).

2. See Proposed Rule of Evidence, rule 704; Een v. Consolidated Freightways, 8 Cir., 220 F.2d 82, 87 (1963) and the authorities cited therein.

evidence may be conclusive of the issue, but they are not bound to accept the opinion or to render the verdict according to it."

In reaching our conclusion that expert opinion evidence was admissible concerning the place of impact, we have carefully reviewed our decision in Kleinsasser v. Gross, supra. In Kleinsasser, we held that it was error to permit testimony as to the point of impact. However, our determination was predicated upon the peculiar circumstances of that case. The basis for our decision was that the expert opinion did not aid the jury in reaching the correct result since the jury was capable of determining the point of impact from the testimony of three eyewitnesses to the collision. Moreover, the expert testimony in that case lacked foundation and contradicted the testimony of the eyewitnesses.[3] Thus, Kleinsasser is not controlling in the present case.

As indicated above, the defendant's second and fifth contentions are that the trial court erred in denying his motion to suppress the results of the blood test. They will be discussed together. It appears that after the defendant was placed under arrest for driving while intoxicated, the arresting officer asked permission of him to have the blood sample withdrawn. The defendant was advised that he had the right to refuse to submit to the test and that he could lose his driver's license for a year if he so refused. The defendant was not advised that the driver of the other car had died as a result of the accident, although it is undisputed that the police officer was aware of that fact. The defendant did ask whether any of the other victims was seriously injured and the police officer responded, "I'm afraid so." After receiving this information and warning, the defendant declined to exercise his right to refuse to submit to the test and the blood sample was withdrawn.

The defendant argues that the failure of the police officer to inform him that a person died as a result of the accident

---

3. See Koenig v. Weber, 84 S.D. 558, 174 N.W.2d 218 (1970); Smith v. Gunderson, supra, where Kleinsasser was so interpreted.

invalidated his consent to submit to the blood test and that without his consent thereto, the results of the test were inadmissible as evidence. We find no merit to this argument.

In support of this argument, the defendant relies upon SDCL 32-23-10. That section provides in substance that when a police officer has reasonable grounds to believe that a person has been driving under the influence of alcohol and has been charged with a traffic violation, the officer can request that such person submit to a chemical analysis of his blood.[4] It also provides that consent to submit to the test is implied from the fact of his driving. It further states:

> "Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the provisions of §§ 32-23-11 and 32-23-12 in the event of such refusal with respect to the revocation of such person's driving permit."

Applying the above described statute to the present case, it is clear that the results of the blood test were admissible despite the failure of the police officer to inform the defendant that the driver of the other car had died as a result of the accident. The statute makes no requirement that the subject be informed of any more than that he has the right to refuse and that his license will be suspended if he does. State v. Batterman, 1961, 79 S.D. 191, 110 N.W.2d 139.

The defendant, however, makes the further contention that his motion to suppress should have been sustained because the blood withdrawn for the test was not withdrawn incident to a lawful arrest. Assignment # 5, supra. This contention is based upon the federal court's holding in the case of Holland v. Parker, D.C., S.D., 354 F. Supp. 196.

---

4. A three judge federal court recently held in Holland v. Parker, D.C., 1973, 354 F.Supp. 196, that the South Dakota implied consent statute is unconstitutional to the extent that it permits a police officer to demand that a subject submit to a blood test without first making a lawful arrest.

The Holland case is not dispositive of our case because the factual situation is considerably and importantly different. Holland had refused to take the blood test, and maintained that no lawful arrest of himself had been made by the officer because the charge against him was a misdemeanor and, secondly, the implied consent statute failed to provide him a hearing prior to revocation of his driver's license. Spry, on the other hand, not only did not refuse to give his consent, but a fair reading of the transcript shows that he claimed to know all about the consent statute, and upon request willingly gave his consent to the taking of the blood sample. The issue before the federal court in Holland was the right to revoke Holland's license under the circumstances. This is not the issue in our case. Holland contended, and the federal court held with him, "that in order for South Dakota to have an implied consent law free of constitutional challenges, not only must there be an arrest requirement prior to its invocation, but that that arrest must be lawful". We are not concerned with the question of "implied consent". Spry gave an actual consent. State v. Werlinger, 84 S.D. 282, 170 N.W.2d 470.

Aside from all that, however, we hold that a defendant's consent or refusal is irrelevant to the admission of the results of the blood test if the test is taken pursuant to a valid arrest. Cf. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.[5] Holland v. Parker, supra.

Among the officers who made the investigation of the accident were Clyde McCue, a South Dakota Highway Patrolman with approximately 10 years' experience, and Charles Crotty, Deputy Sheriff of Lawrence County. They arrived at the scene of the accident shortly after it occurred, and made their investiga-

---

5. Note 12 in Schmerber gives the applicable law as follows: "California law authorizes a peace officer to arrest 'without a warrant . . . (w)henever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.' Cal.Penal Code #836.3. Although petitioner was ultimately prosecuted for a misdemeanor he was subject to prosecution for the felony since a companion in his car was injured in the accident, which apparently was the result of traffic law violations. Cal.Vehicle Code #23101. California's test of probable cause follows the federal standard. People v. Cockrell, 63 Cal.2d 659, 47 Cal.Rptr. 788, 408 P.2d 116 (1965)."

tion by taking measurements of the cars, their position on the highway, and by taking pictures of the scene showing the position of the cars and the condition of the highway, etc. Also, as a part of their investigation they went to the hospital to interview Mr. Spry. With reference to his intoxication and his being the driver of one of the automobiles involved in the collision, Mr. McCue testified as follows:

"Q What did you do upon finding Mr. Spry in the hospital room?

A Well, I went over and talked to him, asked him for his driver's license and further asked him if he was alone in the car at the time of the accident, and if he was driving it.

Q And then what?

A Well, his answer to these were both yes, he was. He was alone and he was the driver of the car that was involved.

Q Did you have further conversation with the defendant at this time?

A Well, yes, I smelled the liquor on his breath from where I was standing and I felt that there was reason to believe that he was driving while under the influence of intoxicating liquor.

Q What then did you do?

A Then I informed him he was under arrest for driving while under the influence of intoxicating liquor, and further explained—started to explain his rights under the implied consent law.

Q And what did you explain to him in regard to those rights?

A Well, I asked him if he'd give a sample of his blood to determine the amount of alcohol in it, and further

advised him that he did not have to do this but if you refused his driver's license and driving privileges would be revoked for a period of a year by the Commissioner of Motor Vehicles.

Q And what was his reply to this request?

A He said, 'I know all about that. You can have some blood'."

Spry was charged with and convicted of a felony. He was not tried upon any misdemeanor charge. The court instructed that the essential elements of the offense charged in the information, each of which the state had to prove beyond a reasonable doubt, were the following:

"1. The defendant at the time and place alleged in the information drove a motor vehicle while under the influence of intoxicating liquor.

2. The defendant drove a motor vehicle negligently.

3. Such negligent driving was the proximate cause of the death(s) of the deceaseds effected without a design to effect the deaths by the defendant."

The officer had probable cause to arrest the defendant on the felony charge of second degree manslaughter even if he in fact placed defendant under arrest for driving while intoxicated. The latter offense is a misdemeanor. "As a general rule, an arrest for a misdemeanor must be made upon a warrant, unless committed in the presence of the arresting officer." Holland v. Parker, supra. The offense of driving while intoxicated was not committed in the presence of the arresting officer. However, a peace officer may without a warrant arrest a person, SDCL 23-22-7:

"* * * (2) When the person arrested has committed a felony, although not in his presence;

(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; * * *"

Also, SDCL 23-22-8:

"A peace officer may also at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest though it afterward appear that the felony had not been committed."

We hold that the peace officer had probable cause to arrest the defendant on the felony charge and that under the following authority the arrest was lawful notwithstanding that defendant was told he was being arrested for driving while intoxicated which was an unsuitable ground for the arrest. See Klingler v. United States, 8 Cir., 409 F.2d 299; State v. Klingler, 84 S.D. 466, 173 N.W.2d 275; State v. Thunder Horse, 85 S.D. 76, 177 N.W.2d 19; and Schmerber v. California, 384 U.S. 757, and especially footnote 12 on page 768, 86 S.Ct. 1826, 16 L.Ed.2d 908.

With respect to the third contention, the defendant argues that the testimony by the witnesses who observed the defendant both before and after the accident was more than sufficient to overcome the presumption of intoxication created by SDCL 32-23-7. As such, the defendant asserts that the trial court committed prejudicial error by instructing the jury on the presumption and thereby permitting them to treat the presumption as evidence. We find no error.

It is generally true that a "presumption" is merely a procedural rule of law intended solely to determine which party must go forward and produce evidence as to a particular point. Thus, the "presumption" itself is not evidence and it disappears upon the introduction of opposing evidence sufficient to raise an issue of fact. Peters v. Lohr, 1910, 24 S.D. 605, 124 N.W. 853; Wibeto v. Ristvedt, 1968, 83 S.D. 221, 157 N.W.2d 343. However, the "presumption" created by SDCL 32-23-7 is more

than a procedural rule. The word "presumption" within the statute is used in the sense of a permissive inference or prima facie proof. State v. Cooke, 1967, 270 N.C. 644, 155 S.E.2d 165; Fortune v. State, 1955, 197 Tenn. 691, 277 S.W.2d 381. Accordingly, the jury should be instructed concerning the presumption of intoxication wherever properly administered test results are available.

In support of his final contention, the defendant relies upon State v. Guthrie, 1970, 85 S.D. 228, 180 N.W.2d 143. In Guthrie, we held that before the results of a blood alcohol test may be admitted into evidence, the state has the burden of proving that nothing was added to the blood sample in its taking which would affect the accuracy of the test. We also recognized that the use of alcohol as an antiseptic to cleanse the skin before taking the sample could affect the accuracy of the test.

In the present case, the doctor who withdrew the blood sample from Spry used alcohol as an antiseptic. However, the state chemist testified that after conducting the initial test to determine the blood alcohol content of the sample, he conducted a second test to determine if any of the alcohol used as an antiseptic had contaminated the sample. Based upon the results of the second test, he concluded that all of the alcohol present in the sample was of the type found in alcoholic beverages and none of it was the type used as an antiseptic. In light of the second test, the trial court apparently found that the blood sample was not contaminated and the results of the blood alcohol test were admitted into evidence.

The defendant contends that the trial court erred in refusing to instruct the jury that the state had the burden of proving that the blood sample was not contaminated. It is our opinion that the trial court was correct in refusing to so instruct the jury. Such an instruction would have been redundant to the basic instruction given by the court that the state had the burden of proving each element of the offense beyond a reasonable doubt.

Judgment affirmed.

WOLLMAN, J., concurs.

BIEGELMEIER, C. J., concurs specially.

HANSON, J., concurs in result.

DOYLE, J., not participating.

BIEGELMEIER, Chief Justice (specially concurring).

I find I am in general agreement with the above opinion, but it will clarify my position to add a note with reference to the testimony of officer McCue. Based on the physical marks on the highway, he was asked in which lane of travel all the significant markings associated with this accident were located; without objection he testified all markings were in the north lane. Then followed a question of his opinion as to the lane of traffic in which the collision occurred; he responded that it occurred in the north lane. The witness was at the scene of the accident soon after it happened, at a time when the cars involved, the debris and the markings on the road had not been disturbed. The trial court did not abuse its discretion in admitting this testimony.

This court has considered the question of opinion evidence in various circumstances over a long period of time and in the many appeals referred to in Justice Winans' opinion; the opinion points out differences from Kleinsasser v. Gross, 80 S.D. 631, 129 N.W.2d 717, and, therefore, does not modify the law announced in that decision.

Neither do I view the general statements made here as broadening Wentzel v. Huebner, 78 S.D. 481, 104 N.W.2d 695. There the court was considering the evidence of a scientist as to the speed of a car from 35 feet of free flight through the air as it left the road and the point of impact with a power pole. While that opinion may contain some general statements of admissibility of evidence, the court wrote because a "lay mind * * * is capable of approximations (of speed) * * * the computation made by this scientist, which the jury was incapable of making, would be helpful"; on this reasoning it approved the reception of the expert's opinion in evidence. It is well we keep in mind the actual decision of the court rather than the general language used in the opinion. With this added note I concur in the opinion.