In the Matter of the Revocation of the Driver's License of Arthur L. HANSEN.

No. 12587.

Supreme Court of South Dakota.

Submitted on Brief April 24, 1979.

Decided June 21, 1979.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for appellant State of South Dakota; William J. Janklow, Atty. Gen., Pierre, on brief.

Kenneth C. Hanson, Sioux Falls, for respondent Arthur L. Hansen.

DUNN, Justice.

The state appeals from a judgment of the circuit court that set aside an order entered by the Department of Public Safety revoking Hansen's driver's license. We affirm.

On the morning of Tuesday, November 1, 1977, Hansen, a roofing contractor in Sioux Falls, South Dakota, was inspecting various sites of roofing jobs in progress. At approximately 9:30 that morning, Hansen was proceeding along a county highway about one mile west of Renner, South Dakota, when he lost control of his vehicle which left the pavement, rolled down the embankment and landed in the ditch. Hansen suffered multiple abrasions, bruises and cuts, as well as severe trauma, as the result of the accident. He was unconscious for a short time after the accident and lost a considerable amount of blood. Hansen remained in the ditch until approximately 11:15 a. m. at which time help arrived. While he was in the ditch, Hansen became hysterical and felt that he was going to die. He testified that he had a bottle of brandy in his tool box and that he drank part of the brandy to offset the hysteria.

At approximately 11 a. m. on the morning of the accident, a highway patrol officer received a radio call regarding the accident. The officer arrived at the scene and observed the vehicle in the ditch "with some blood splattered on it." Upon ascertaining that the person involved in the accident had been taken to the hospital, he proceeded to the hospital and found Hansen on a gurney in the emergency ward. The officer testified that Hansen appeared to be coherent and that he smelled "the strong odor of an alcoholic beverage" on Hansen's breath and observed that Hansen's speech was slurred. At this point, the officer arrested Hansen for driving while intoxicated and read the implied consent warning to Hansen. On three occasions, the officer made a request to Hansen that he submit to a chemical test of his blood. On the first occasion, Hansen stated that he would not take the test, and on the second and third occasions, he failed to respond.

On the basis of Hansen's refusal to submit to a chemical analysis of his blood as testified to by the officer, a hearing was held before a hearing officer for the Department of Public Safety. On January 3, 1978, the hearing officer entered an order revoking Hansen's driver's license for a period of one year. SDCL 32–23–11. Hansen petitioned the circuit court for a hearing in the matter. SDCL 32–23–12. A trial de novo was held on April 24, 1978, and on July 12, 1978, the circuit court entered a judgment in favor of Hansen ordering the state to restore his driver's license and driving privileges. The state appeals from the judgment of the circuit court.

The judgment of the circuit court was based upon the following findings of fact and conclusions of law:

#### "FINDINGS OF FACT

"1. Petitioner Arthur L. Hansen is engaged in the roof contracting business in Sioux Falls.

"2. On the morning of November 1, 1977, petitioner was inspecting various roof jobs in progress, and was in the process of proceeding to a new job located near the intersection of Highway I29 and County Road 130, to meet with a Marlo Schultz, another contractor.

"3. Sometime between 9:30 A.M. and 10:00 A.M., while proceeding westwardly on County Highway 130, approximately two miles west of Renner, South Dakota,

petitioner lost control of the vehicle, and the vehicle, which was a pickup truck, rolled over, but ended right side up in the ditch along side the road. Because of the accident, petitioner suffered multiple abrasions, bruises and cuts, and was badly shaken up. County Highway 130 is a relatively narrow, paved highway with raised edges on each side. Petitioner testified that he was using snuff, and was in the process of reaching for a cup which he used as a spittoon, when he lost control of the vehicle.

"4. Help did not arrive for petitioner until approximately 11:15 A.M. During the interval between the accident and the time help arrived, petitioner is not quite clear as to all of the happenings; however, it can be established as a fact that petitioner lost a considerable amount of blood, and that he was unconscious for a short period of time immediately following the accident. It is also established that petitioner drank from a bottle of brandy he had in the tool box of his pickup to alleviate his pain and suffering, during the time he was outside the vehicle.

"5. At approximately 11:00 A.M., Trooper Lee F. Patterson received a radio call advising of the accident, and proceeded to the scene of said accident. Trooper Patterson did not arrive at the scene of the accident until approximately 11:30 A.M., and was advised that the person involved in the accident had already been driven to a hospital.

"6. Trooper Patterson then proceeded to the hospital. Upon arriving at the hospital, at about 12:00 A.M., Trooper Patterson did not see or talk to any doctor or hospital official, but entered the emergency ward, where he found petitioner laying on a cot. Petitioner's open wounds had still not been treated nor sewn up. Trooper Patterson testified that he talked to petitioner for less than five minutes, did not ask petitioner to do any dexterity test or take a breathalyzer test, but that he smelled alcohol on petitioner's breath, whereupon he placed petitioner under arrest for driving while intoxicated and read to petitioner the print-ed Implied Consent Warning Card, and requested him to take a chemical test of his blood to determine his blood alcohol concentration. Trooper Patterson testified that he requested petitioner to submit to a blood test on three separate occasions. That on the first occasion, petitioner stated that he would not take the test. That on the other two occasions, petitioner failed to answer. Petitioner, however, testified that he did not remember seeing or talking to Trooper Patterson on that occasion. Hospital records introduced at the trial indicate that Mr. Hansen was very difficult to examine, because of acute trauma. The Court therefore finds that Trooper Patterson did smell alcohol on petitioner's breath, but that petitioner did not hear or clearly understand the questions propounded by Trooper Patterson."

"CONCLUSIONS OF LAW

"1. That because of the time lapse of more than two hours between the time of the accident and the time of interviewing the petitioner, the law requires a higher of [sic] degree of investigation than the mere knowledge of an accident and smelling alcohol on the breath of petitioner.

"2. That probable cause did not exist to arrest Arthur L. Hansen for a violation of S.D.C.L. 32–23–1.

"3. That Arthur L. Hansen was not lawfully arrested for violation of S.D.C.L. 32–23–1.

"4. That because of acute trauma, petitioner did not hear or understand the requested blood test; and therefore, did not refuse to take said blood test.

"5. That Arthur L. Hansen's license to drive a motor vehicle should not be revoked."

The state's one assignment of error asserts that the circuit court erred in concluding that probable cause did not exist to arrest Hansen for driving while intoxicated. Upon our review of the matter, we will give due regard to the opportunity of the circuit court to judge the credibility of witnesses, and we will not set aside the circuit court's findings unless they are clearly erroneous. SDCL 15–6–52(a).

In considering the question of probable cause for arrest, we must remember that the officer was not privy to all of the facts brought out at the trial. He knew nothing of Hansen's activities that morning. He was called to the scene of a one-vehicle accident where the vehicle had left the road for no apparent reason. The officer was advised that the driver had been taken to the hospital, and he proceeded to the hospital to interview the man. He found him unattended on a gurney in the emergency room. Hansen readily admitted that he was the driver of the vehicle involved in the accident. The officer testified that he found Hansen to be groggy but coherent. He noted a strong odor of alcohol on Hansen's breath, as well as a tendency to slur his words. On the basis of his observations, admittedly for only a few moments, he placed Hansen under arrest for driving while intoxicated. We could second-guess this officer and determine that he should have investigated the matter further before making the arrest; however, some two hours had elapsed since the accident, and the officer was aware that any blood test would be meaningless if not obtained promptly. Accordingly, while the officer may have been remiss in not at least checking with the attending physician in the emergency room before interrogating Hansen, there was probable cause for arrest when measured against South Dakota case law. *State v. Spry,* 1973, 87 S.D. 318, 207 N.W.2d 504.

The trial court concluded, however, "[t]hat because of acute trauma, petitioner did not hear or understand the requested blood test; and therefore, did not refuse to take said blood test." This conclusion is fully justified from the evidence. Hospital records reveal that Hansen was experiencing acute trauma when he was admitted to the emergency ward. He had numerous lacerations and injuries and had lost a great deal of blood. The trauma was so serious that the doctor had difficulty examining and diagnosing his condition. One of Hansen's employees testified that at 1:30 p. m. Hansen did not know his employee's name or seem to remember him at all.

The officer testified that under these conditions Hansen once refused a blood test and failed to respond at all to two further requests that he take a blood test. The fact that the officer made two further requests after an apparent refusal indicates that the officer, too, was uncertain about the first refusal. More important was the officer's failure to consult with any doctor or nurses as to Hansen's condition before making the request. This would not have been a time-consuming investigation; yet he proceeded to conduct his inquiries of this unattended man in the emergency room while Hansen was obviously badly injured and in no condition to make any decisions. The least that could be expected is that the officer consult with the doctor or nurses before attempting to interrogate Hansen as to a blood test. It is noted that the state does not even challenge the trial court's conclusion that Hansen did not refuse to take the blood test.

Accordingly, while we find that the trial court erroneously concluded that there was no probable cause to arrest Hansen, we find that there was sufficient evidence to sustain the trial court's reversal of the revocation of Hansen's driver's license.

The judgment is affirmed.

WOLLMAN, C. J., and MORGAN and HENDERSON, JJ., concur.   ·

FOSHEIM, J., concurs specially.

FOSHEIM, Justice (concurring specially).

The trial court concluded that Hansen did not refuse to take the blood test because his condition prevented him from hearing or understanding the request. As the majority opinion notes, this conclusion is not challenged. Since it is not an issue on appeal and was not argued, I fail to see any purpose in discussing what the officer failed to do by way of investigation before requesting a blood test.