STATE OF NORTH CAROLINA v. ANDREW WORTH ALEXANDER

No. 7221SC628

(Filed 20 September 1972)

1. Homicide § 21— manslaughter — sufficiency of State's evidence to withstand motion for nonsuit

In a prosecution for manslaughter, defendant's motion for non-suit was properly denied where there was ample evidence that defendant operated his vehicle at the time in question at a speed in excess of the posted speed limit in a careless and reckless manner while under the influence of intoxicating beverages, and that the death of the victim was proximately caused by the culpable negligence of defendant.

2. Homicide § 17— evidence with respect to motive — admissibility

The trial court properly admitted into evidence testimony that defendant was driving on a restricted license prohibiting operation of his vehicle after 8:00 p.m. when he was involved in an accident at 7:15 p.m. where such evidence was relevant and competent on the issue of criminal negligence as indicating defendant's motive for speeding.

3. Homicide § 15— opinion evidence — admissibility

The trial court committed no error in permitting a State's witness who observed defendant three and one-half hours after his arrest to give an opinion as to defendant's intoxicated condition where other evidence of the State tended to show that defendant had consumed no food or drink during the interval between the arrest and observation of defendant by the witness.

4. Automobiles § 126— breathalyzer test results — admissibility

In a manslaughter prosecution evidence of results of a breathalyzer test given four hours after an automobile collision was relevant and of probative value.

5. Criminal Law § 95— admission of evidence competent for restricted purpose — request for instructions

The trial court's failure to instruct that admissions as to convictions of unrelated prior criminal offenses were not competent as substantive evidence but were competent as bearing upon defendant's credibility as a witness did not constitute error, absent a request for such instruction.

6. Automobiles § 110— violation of safety statute — culpable negligence

In a manslaughter prosecution, the judge's charge properly instructed the jury that an unintentional violation of a safety statute, without more, is not culpable negligence.

7. Criminal Law § 43— motion picture — corroborative evidence — instructions on purpose of admission

The defendant, by stating he had no objections, agreed to the introduction of a motion picture of himself for the purpose of cor-

roborating two state's witnesses, and he cannot complain because the trial judge instructed the jury as to the purpose for which he agreed it might be received.

APPEAL by defendant from *Armstrong, Judge,* 3 April 1972 Session of Superior Court held in FORSYTH County for the trial of criminal cases.

Defendant was charged in a bill of indictment, proper in form, with the felony of manslaughter arising out of a collision between an automobile operated by the defendant and two other automobiles, one of which was operated by the deceased, Walter Alton McLaughlin.

The State's evidence tended to show that on 31 July 1971, the defendant, a resident of Raleigh, North Carolina, flew on a commercial airline to Knoxville, Tennessee, where he picked up and paid for his recently overhauled 1966 Buick Electra automobile, and at approximately 2:30 p.m., defendant proceeded to drive the Buick automobile east out of Tennessee, returning to North Carolina. Later on the same day, at about 7:15 p.m., defendant was driving east through Winston-Salem, North Carolina, on Interstate Highway 40 in the vicinity of the Peters Creek Parkway bridge. At that point, I-40 was a four-lane highway with two lanes running east and two lanes running west. The maximum posted speed limit in that area was 45 miles per hour. In the vicinity of the Peters Creek Parkway bridge, I-40 was straight and graded. At the time of the collision there was intermittent light and heavy rain and the road was wet.

Witnesses for the State testified that they saw the defendant operating his automobile at speeds of more than 45 miles per hour, and that defendant's car was weaving back and forth in the two eastbound lanes of I-40 for a quarter of a mile before defendant's car suddenly began to slide sideways toward the north. The defendant's car bounced off the highway median sailing ten feet into the air and landing in the westbound lane of I-40, where it collided with an orange 1969 Mustang automobile being operated by deceased and traveling at about 40 miles per hour in the outside lane for westbound traffic. Witness James Boyd Hart, operating a 1968 Ford station wagon in the inside lane for westbound traffic and just behind the deceased's car, collided with the rear of defendant's Buick automobile immediately after the collision between the Buick and

the Mustang automobiles. Defendant stipulated that deceased's death was a proximate result of injuries received in the collision.

Witnesses for the State testified that they observed defendant after the accident, that he was under the influence of intoxicating beverage, his speech was slurred, his tongue was thick, his breath had a terrible odor of alcohol, there were broken bottles of whiskey in the car with defendant, defendant used profane language, and in the ambulance on the way to the hospital defendant bragged that "[t]hat thing would do eighty in no time flat until I hit that thing." At 11:10 p.m., approximately four hours after the accident had occurred, defendant was administered a breathalyzer test which resulted in a reading of .21 percent alcohol blood content.

Defendant's evidence tended to show that on the plane trip to Knoxville, defendant had two drinks from one and one-half ounce whiskey bottles, and that defendant consumed no other alcohol on 31 July, 1971. Returning toward Raleigh, defendant stopped in Asheville, North Carolina, and purchased a fifth of whiskey, but the bottle remained sealed and defendant drank none of that whiskey that day. On I-40 in Winston-Salem, defendant was traveling east, moving with traffic at about 45 miles per hour, when the driver of the vehicle in front of him applied his brakes and defendant also applied his. Defendant's car suddenly slid sideways, jumped the median and defendant remembered nothing after hitting the median until he awoke in Forsyth Memorial Hospital. At the hospital defendant was treated for lacerations on his head and arms and broken ribs. A laceration on defendant's lip was sutured and bandaged with gauze and cotton containing a fluid that smelled like alcohol, and this bandage was on defendant's lip at the time the breathalyzer test was administered.

In rebuttal, the State offered the testimony of Dr. George Podgorny, who testified that he had treated defendant at Forsyth Memorial Hospital at about 7:53 p.m., on 31 July 1971, and that in his opinion, based on his observations of defendant, defendant was intoxicated at that time. Dr. Podgorny also testified that he had applied a liquid solution to defendant's lip after suturing it but that the liquid was Aqueous Zephiran which contains no alcohol.

The jury returned a verdict of guilty of involuntary manslaughter. Judgment of imprisonment for a period of not less

than three years nor more than five years was imposed. Defendant appealed.

*Attorney General Morgan by Assistant Attorney General Melvin and Associate Attorney Conely for the State.*

*Powell & Powell by Harrell Powell, Jr., for defendant appellant.*

MALLARD, Chief Judge.

Defendant has twenty-six assignments of error. Three of these assignments of error are not brought forward in defendant's brief, numbers 2, 9 and 21, and are therefore deemed abandoned. See Rule 28 of the Rules of Practice in the Court of Appeals.

[1] Defendant assigns as error the denial of his motion for judgment as of nonsuit at the close of all the evidence. There was ample evidence that the defendant was operating his automobile on this occasion at a speed in excess of the posted speed limit, in a careless and reckless manner, while under the influence of intoxicating beverages, and that the death of the deceased victim was proximately caused by the culpable negligence of the defendant. Culpable negligence in criminal cases has been defined by our Supreme Court in many cases, among which are: *State v. Gurley*, 253 N.C. 55, 116 S.E. 2d 143 (1960) ; *State v. Hancock*, 248 N.C. 432, 103 S.E. 2d 491 (1958) ; and *State v. Cope*, 204 N.C. 28, 167 S.E. 456 (1933). When the law of culpable negligence is applied to the evidence in this case, we hold that defendant's motion for judgment as of nonsuit was properly overruled.

[2] Defendant assigns as error the admission into evidence of the testimony of arresting Officer Lloyd Kenneth Nelson that defendant was driving on a restricted driver's license. Defendant contends such evidence was irrelevant and incompetent. However, evidence that defendant was driving on a restricted driver's permit which prevented him from legally operating his vehicle after 8:00 p.m. until 5:00 a.m. the next day was relevant and competent on the issue of criminal negligence, as indicating that defendant's motive for speeding was to ensure his arrival home in Raleigh before the 8:00 p.m. deadline. Stansbury, N. C. Evidence 2d, § 83, n. 72.

[3]  Defendant also contends that the court erred in permitting State's witness Harmon to give his opinion as to the intoxicated condition of the defendant when he first saw the defendant on that date at approximately 10:45 p.m. Mr. Harmon testified he gave the defendant a breathalyzer test on this occasion. In view of the testimony of the arresting officer, Nelson, that the defendant was under his observation all of the time from the arrest until after the breathalyzer test and that during that time he did not see the defendant eat or drink anything, it was not error to permit Mr. Harmon to give his opinion as to the intoxicated condition of the defendant approximately three and a half hours after the defendant was arrested.

[4]  Defendant assigns as error the admission into evidence of the results of a breathalyzer test given defendant almost four hours after the collision, which test gave a reading of .21 percent by weight of alcohol in his blood. "Obviously, the breathalyzer can measure only the amount of alcohol which is in a person's blood *at the time* the test is given. . . . [I]t is undoubtedly true that the sooner after the event the test is made, the more accurate will be the estimate of blood-alcohol concentration at the time of the act in issue." *State v. Cooke,* 270 N.C. 644, 155 S.E. 2d 165 (1967). The question whether the existence of intoxication at a particular time is competent to show the existence of that condition at another time is a question of materiality, to be determined upon the facts of each particular case, including the length of time intervening and the showing, if any, whether the condition remained unchanged. *State v. Davis,* 265 N.C. 720, 145 S.E. 2d 7 (1965) ; *State v. Oldham,* 10 N.C. App. 172, 177 S.E. 2d 769 (1970). The testimony of Officer Nelson was that defendant had consumed no alcohol during the interval between his arrest at the scene of the collision and the test. We hold that a breathalyzer test given under the facts of this case four hours after the collision was relevant and of probative value.

Defendant contends it was error to admit into evidence testimony that on 7 December 1970 defendant had refused to take a breathalyzer test. Although incompetent even for the purpose of impeachment of defendant's testimony, we hold that such evidence was not prejudicial in view of defendant's subsequent admission that he was arrested for driving under the influence of intoxicating liquor in December 1970 and was convicted of that crime in February 1971.

[5]  Defendant assigns as error the failure of the court to give instructions to the jury limiting consideration of the evidence of commissions of prior crimes to impeachment purposes only. When cross-examining the defendant, the solicitor, without objection, questioned defendant as to whether he had been convicted of specific prior criminal offenses. In the court's charge to the jury, the judge restated as a portion of the State's evidence that on cross-examination defendant admitted having been convicted of certain specific crimes. Admissions as to convictions of unrelated prior criminal offenses are not competent as substantive evidence, but are competent as bearing upon defendant's credibility as a witness. Stansbury, N. C. Evidence 2d, § 112; *State v. Goodson*, 273 N.C. 128, 159 S.E. 2d 310 (1968). Absent a request, the failure of the court to give such an instruction was not error. *State v. Goodson, supra; State v. McKinnon*, 223 N.C. 160, 25 S.E. 2d 606 (1943).

[6]  Defendant assigns as error a portion of the judge's charge to the jury concerning culpable or criminal negligence. Defendant contends the judge failed to properly instruct the jury that an unintentional violation of a safety statute, without more, is not culpable negligence and cited *State v. Gurley*, 253 N.C. 55, 116 S.E. 2d 143 (1960). We do not agree. Judge Armstrong instructed the jury as follows:

> "Members of the jury, I further instruct you that an unintentional violation of a statute . . . unaccompanied by recklessness or probable consequences of a dangerous nature when tested by the rule of reasonable foresight is not such negligence as imports criminal responsibility. However, . . . if the inadvertent, that is, or the unintentional violation of a prohibitory statute . . . be accompanied by recklessness or probable consequences of a dangerous nature when tested by the rule of reasonable foresight, amounting altogether to a thoughtless disregard of consequences, or a heedless indifference to the rights and safety of others, then such negligence, if death proximately ensues, would be criminal negligence, and the actor would be guilty of involuntary manslaughter."

The above-quoted portion of the judge's charge to the jury complies with the requirements of *State v. Gurley, supra.*

[7]  The defendant assigns as error the instructions of the court that a motion picture of the defendant was offered by

the State to corroborate two of the State's witnesses, Dr. Podgorny and Officer Nelson, or to illustrate their testimony. In his brief the defendant cites no authority in support of his position, and the State cites no authority supporting its contention that the motion picture was competent to "corroborate" the witnesses. However, immediately prior to the challenged instructions, the solicitor had, in offering the motion picture, stated that he was offering it "for the purpose of corroborating" the two witnesses, and the defendant not only failed to object but stated, "We have no objections." The defendant, by stating he had no objections, agreed to the introduction of the motion picture for the purpose of "corroborating" the two witnesses, and he cannot complain because the trial judge instructed the jury as to the purpose for which he agreed it might be received. We do not think that limiting the consideration of the photograph to corroborative purposes (as well as illustrative) was prejudicial error in this case. See *State v. McKissick*, 271 N.C. 500, 157 S.E. 2d 112 (1967).

The defendant has other assignments of error relating to the charge, but when it is read contextually, we are of the opinion and so hold that no prejudicial error appears in the charge. The defendant has had a fair trial, free from prejudicial error.

No error.

Judges CAMPBELL and BRITT concur.