592 So.2d 295 (1991)
Thomas Deron LOGAN, Appellant,
v.
STATE of Florida, Appellee.
No. 90-403.
District Court of Appeal of Florida, Fifth District.
December 19, 1991.
Rehearing Denied January 29, 1992.
*296 Craig Stephen Boda of Craig Stephen Boda, P.A., Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
GRIFFIN, Judge.
Thomas Deron Logan ("appellant") appeals his convictions on four counts of DUI manslaughter[1] and four counts of culpable negligence manslaughter.[2] We affirm the convictions for DUI manslaughter but reverse the convictions for culpable negligence manslaughter.
The accident that resulted in the deaths of four victims occurred at approximately 8:20 p.m. on January 14, 1989, in Flagler County, Florida. The testimony at trial *297 presented a detailed picture of appellant's activities during the hours prior to the accident, which are briefly summarized as follows. About 4:30 p.m., appellant, driving his Ford pickup, went to a local pool hall. He and a male companion, Ky Ingram, began drinking bourbon from a bottle in his truck. After about one hour, they were asked to leave the pool hall. They then met up with a female acquaintance, Koreen Kowalsky. They went over to Koreen's house, watched TV for a while, and continued drinking. There was testimony of various incidents of "cutting up" during the afternoon and early evening, including driving over parking curbs with the oversized tires of defendant's truck. A little before 8 p.m. they picked up Koreen's sister, who was getting off work.
Appellant proceeded north on U.S. 1 with his three passengers, en route to a mud bog. There was evidence that appellant continued to drink. He passed a truck on the highway so closely that a passenger asked him if he felt okay. Appellant got lost and made a U-turn in the grassy median to change direction. Then, after finding the bog, they almost got stuck in the mud. Appellant drove his truck through a fence to exit the bog. They came out onto Palm Coast Highway, where appellant and his male companion got out of the truck and hugged each other to celebrate that they were no longer lost. Appellant then positioned his truck in the road perpendicular to oncoming traffic, pointing his headlights in the direction of an adjacent house in an effort to read the street sign. Another vehicle came upon them and had to wait a couple of minutes for defendant to move the truck out of the way.
After deciding on a direction, appellant drove his truck down the road at a speed estimated to be between 55 and 62 miles per hour. Approaching the intersection where the accident occurred, appellant failed to stop at the stop sign and his truck violently collided with an automobile containing four persons. The sole survivor in the car was the driver. Ky Ingram was ejected from appellant's truck on impact and died four days later.
Appellant was charged with four counts of DUI manslaughter (Counts I through IV) and four counts of culpable negligence manslaughter (Counts V through VIII) on May 10, 1989. Appellant defended the DUI manslaughter charges on the theory that he was not impaired at the time of the accident since the alcohol he had drunk had not yet entered his bloodstream in sufficient quantities to impair his judgment. The charges of manslaughter were defended on the theory that the deaths of the victims were accidental.
Appellant has raised eight issues in his brief, only one of which warrants reversal of the convictions for culpable negligence.[3] The court, at the state's request, charged the jury concerning twelve civil traffic infractions allegedly committed by defendant during the hours and minutes before the collision. First, the court gave several instructions concerning speed, as follows:
You should understand that no person shall drive a motor vehicle upon a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.
In every event, speed shall be controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance or object or entering the highway and entering the highway  or entering the highway, in entering the highway in compliance with legal requirements and duty of all persons to use due care.
The driver of every vehicle shall, consistent with the aforesaid duty, drive at an appropriately reduced speed when approaching and crossing an intersection and approaching and going around a curve.

*298 On all streets or highways of the State and County, the maximum speed limits for all vehicles is 30 miles per hour in a business or residence district and 55 miles per hour at any time at all other locations.
No change in speeds from 30 miles per hour in a business or residential district or 55 miles per hour at any other location shall take effect until the zone is posted pursuant to law.
The trial court then went on to give several more instructions concerning other violations of Chapter 316, including: (1) an instruction that it is unlawful for any person to possess an open container of an alcoholic beverage while operating a motor vehicle;[4] (2) an instruction concerning the proper lane to use on divided roadways; (3) an instruction concerning driving in the median of a roadway; (4) an instruction that no person is allowed to willfully obstruct the free, convenient, and normal use of any public street or highway; (5) an instruction that U-turns are improper unless safely made; (6) several instructions concerning stopping at stop signs and yielding the right-of-way; (7) several instructions concerning when it is unlawful to drive in the left-hand lane of a two-lane highway; and, finally, (8) an instruction that it is unlawful to operate a motor vehicle unless that person is restrained by a seat belt.
Appellant argues that these instructions constitute reversible error because the jury was invited to add together all of the Defendant's "civilly infractive" conduct over the course of the evening and determine that, in total, it amounted to culpable negligence. We conclude defendant's argument has merit.[5] Culpable negligence consists of:
more than a failure to use ordinary care toward others. In order for negligence to be culpable, it must be gross and flagrant. Culpable negligence is a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantoness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.
The negligent act or omission must have been committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury.
Fla.Std.Jury Instr. (Crim.) 782.07 at 68-69. Violation of a statute may be evidence of negligence; however, culpable negligence is not equivalent to the commission of a traffic infraction. Even in a civil case, a traffic violation is only some evidence of ordinary negligence.
Traffic ordinances often prohibit specific conduct that is legislatively deemed likely to cause harm to others. When this is so and the same conduct that is prohibited by a traffic ordinance is alleged in a civil action to be negligent conduct causing injury or damage the traffic ordinance becomes in law somewhat of a legislative minimum standard of due care as to that specific conduct and evidence of the traffic ordinance and of the alleged conduct violating it is admissible in evidence under an instruction to the jury that if they find the evidence shows a party violated the traffic ordinance, then that finding is some evidence of negligence.
*299 Estate of Wallace v. Fisher, 567 So.2d 505, 507 (Fla. 5th DCA 1990) (footnote omitted). The commission of traffic infractions is not sufficient, without more, to support a conviction for culpable negligence manslaughter. Culpable negligence depends on the extreme character of the conduct itself, not its mere illegality. See State v. Patel, 453 So.2d 218, 219 (Fla. 5th DCA 1984) (Sharp, J., concurring in part); see also Tubman v. Commonwealth, 3 Va. App. 267, 275, 348 S.E.2d 871, 875 (1986).
In Filmon v. State, 336 So.2d 586 (Fla. 1976), cert. denied, 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375, reh. denied, 431 U.S. 960, 97 S.Ct. 2689, 53 L.Ed.2d 279 (1977), the supreme court explained that the key to determining culpable negligence in cases involving operation of a motor vehicle is the "totality of circumstances surrounding the incident."[6]See also High v. State, 516 So.2d 275 (Fla. 2d DCA 1987). In the present case, several of the traffic violations referenced in the instructions took place a substantial physical and temporal distance from this accident. None is of the character to evince gross, flagrant disregard for human life. Most important, of all the violations on which instructions were given, only speed and running the stop sign could have had any direct causal relationship to these unfortunate deaths. See Magaw v. State, 537 So.2d 564 (Fla. 1989).
A case that does illustrate circumstances in which multiple traffic infractions will support culpable negligence is Ellison v. State, 547 So.2d 1003 (Fla. 1st DCA 1989), quashed in part on other grounds, 561 So.2d 576 (Fla. 1990). There a criminal suspect, eluding a police officer, was weaving through traffic and traveling more than thirty-five miles per hour over the speed limit on a bridge. He then smashed through a closed toll gate and moved onto a well-traveled thoroughfare at high speed before losing control of his vehicle and crashing head-on into an oncoming car. It was the nature of these actions, viewed individually and in continuous sequence, that equated to culpable negligence, not the fact that the conduct violated the traffic code.
Apart from their substance, the sheer volume of these instructions and their consequent prominence had to be misleading to the jury. These instructions were given in a vacuum, sandwiched in between the charge defining the DUI presumptions and the presumption of innocence charge. The jury was given no indication why it was receiving instructions concerning these civil infractions, or what to do with them. It is not necessarily error to instruct the jury on violation of safety statutes in a culpable negligence case.[7] However, proper instructions, which would have advised the jury how to use these statutory violations in evaluating culpable negligence are necessary. See State v. Alexander, 16 N.C. App. 95, 191 S.E.2d 395, cert. denied, 282 N.C. 305, 192 S.E.2d 195 (1972) (limiting instruction given); Darnell v. Commonwealth, 6 Va. App. 485, 370 S.E.2d 717 (1988) (limiting instruction necessary).
Juries require careful instruction concerning how the evidence of statutory violations is to be used. See Jupiter Inlet Corp. v. Brocard, 546 So.2d 1, 3 (Fla. 4th DCA 1988), rev. denied, 551 So.2d 461 (Fla. 1989). The problem in this case is that the jury could have concluded from these instructions that it was entitled to (or bound to) find appellant guilty of culpable negligence manslaughter based their finding that he committed some or all of these traffic infractions. This is not the law in Florida and we cannot agree with the state, under the circumstances of this case, that this error was harmless. The giving of *300 these instructions was reversible error requiring reversal of the convictions for culpable negligence manslaughter.
It also appears the convictions for culpable negligence manslaughter should be vacated based on the failure to instruct the jury on justifiable and excusable homicide, which are defenses to manslaughter.[8] In Miller v. State, 573 So.2d 337 (Fla. 1991), the Florida Supreme Court held that a trial judge's failure to instruct the jury on the defenses of justifiable and excusable homicide was fundamental reversible error in prosecutions for manslaughter.[9]
Another issue not raised on appeal, but which we cannot ignore because of its constitutional dimension, is whether appellant could be convicted of both DUI manslaughter and culpable negligence manslaughter for the death of each victim since only one homicide conviction and sentence can be imposed for a single death. See Kurtz v. State, 564 So.2d 519 (Fla. 2d DCA 1990). The Fourth District Court of Appeal also recently considered this issue in light of the enactment of section 775.021(4), Florida Statutes (Supp. 1988). Murphy v. State, 578 So.2d 410 (Fla. 4th DCA 1991). Both opinions ably discuss the competing issues, but we believe Kurtz correctly concludes, even in the face of the statutory amendment, that a single death will not support conviction of two homicides.
The convictions for DUI manslaughter are AFFIRMED; the convictions for culpable negligence manslaughter are REVERSED and this cause is REMANDED for proceedings consistent with this opinion.
GOSHORN, C.J., and DIAMANTIS, J., concur.
NOTES
[1] § 316.193(1), Fla. Stat. (1989).
[2] § 782.07, Fla. Stat. (1989).
[3] To be exact, we find no merit in any of the other issues raised by appellant except the allowance of the state's impeachment of its own witnesses. However, we agree with the state that this error was harmless in light of all the testimony of these witnesses and of the defendant himself, and in light of the amendment to section 90.608, Florida Statutes (Supp. 1990).
[4] It is unlawful ... for any person to possess an open container of an alcoholic beverage while operating a vehicle in the state... . (3) An open container shall be considered to be in the possession of the operator of a vehicle if the container is not in possession of a passenger and is not located in a locked glove compartment, locked trunk or other locked nonpassenger area of the vehicle.
§ 316.1936(2), -.1936(3), Fla. Stat. (1989).
[5] Appellant has also argued that none of his pre-accident conduct, which constituted the factual basis for these jury instructions, was admissible because it was irrelevant to the issues in the case. With the exception of appellant's failure to wear his seat belt, we disagree.
[6] The Filmon court distinguished Peel v. State, 291 So.2d 226 (Fla. 1st DCA), cert. denied, 298 So.2d 164 (Fla. 1974) in which a defendant traveling forty to fifty miles per hour in daylight failed to stop for a stop sign at an intersection. The court reversed the jury verdict, finding no culpable negligence manslaughter as a matter at law.
[7] See, e.g., State v. Hefler, 310 N.C. 135, 310 S.E.2d 310 (1984) (trial court charged jury on four traffic infractions, including speeding, failure to drive on right side of highway, and failure to decrease speed to avoid colliding).
[8] This issue was not raised by either party in their briefs, but appellant filed Miller v. State as supplemental authority.
[9] This court has held that the error may be waived if defense counsel specifically requests an abbreviated instruction. See Faulk v. State, 573 So.2d 199 (Fla. 5th DCA 1991); Armstrong v. State, 566 So.2d 943 (Fla. 5th DCA 1990), decision approved, 579 So.2d 734 (Fla. 1991). Although it is possible the error was waived by appellant's request for an abbreviated instruction, the record suggests he requested only standard instructions.